## No. 4635.

### FRED. COLLIN *v.* J. W. KNOBLOCK. J. W. KNOBLOCK *v.* FRED. COL-LIN. (Consolidated).

Under the intrusion into office act, it does not appear that authority was conferred upon the courts to go beyond an investigation of the titles set up by the contestants for the office in controversy.

A review of all the cases adjudicated by this court under the intrusion act will show, that, in every instance, not one will be found which depended for its solution upon the inquiry as to which of the contestants obtained the larger number of votes.

The adjustment and compilation of election returns, determining the number of legal and illegal votes cast for each candidate, declaring the result of an election and furnishing the successful candidate with the proper certificate, in short superintending and con-trolling all the details of an election belong properly to the political department of the Government.

It is only under the statutory provision of 1855, that courts can proceed, in relation to parish offices, and through the agency of juries, to supervise the counting of votes, correct cal-culations, purge the polls of illegal votes, ascertain and establish majorities. It is con-fined to cases where no commissions have issued.

The subject matter of proceedings under the intrusion act is widely different from that or the statute of 1855. In cases under the intrusion law, courts can not go beyond commis-sions legally issued.

No authority is delegated to the judiciary under the intrusion act, to discuss, modify or abolish the official returns of the regular State returning officers. Such a right can not be assumed as an implied power.

With the character of laws as being odious, or entitled to favor, courts have not to deal.

This court will take judicial cognizance of the fact that on the fourth day of December, 1872, the date of the Warmoth commission to Knoblock, the official returns of the election had not been promulgated, and therefore that the issuing of the commission was a nullity.

APPEAL from the Fifteenth Judicial District Court, parish of La-fourche. *Bettie, J. Louis Bush, Clay Knoblock* and *John Billin,* for appellee. *J. L. Belden,* for appellant. *T. L. Winder,* as district attorney.

Justices concurring: Ludeling, Taliaferro, Howell, Morgan.

TALIAFERRO, J. This is a controversy under the intrusion act for the office of parish judge of the parish of Lafourche, each of the contestants claiming to have been elected to that office at the general election held in November, 1872. Judgment was rendered in favor of Knoblock, and Collin has appealed.

Under the intrusion into office act, we do not find authority conferred upon the courts to go beyond an investigation of the titles set up by the contestants for the office in controversy.   The time at which the law was enacted and the circumstances which required its enactment show clearly that it contemplated cases only where the parties held adverse muniments of title importing right in the holders to the office contended for, to cases where each of the parties held a commission, or where one of the litigants claimed by certificate of election and the other by appointment, exhibiting his commission and setting up the ineligibility of his adversary. The intrusion law was passed in October, 1868. Previous to and subsequent to that time persons were frequently elected to offices to which they were ineligible by reason of the disabilities then imposed by law upon them from having been active participants in the late rebellion.   Others, claiming these offices under appointment and holding commissions as evidence thereof, could resort to this law to have these conflicting claims judicially decided.   But the question in cases of that class was simply the eligibility of one of the parties and the validity of the other's commission.   We think a review of all the cases adjudicated by this court under the intrusion act will show that in every instance the issues were as we have stated them, and that no case will be found which depended on its solution upon the inquiry as to which of the contestants obtained the larger number of votes.   The adjustment and compilation of election returns, determining the number of legal and illegal votes cast for each candidate, declaring the result of an election and furnishing the successful candidate with the proper certificate; in short, superintending and controlling all the details of an election, belong primarily and properly to the political department of the government.

This court in the case of the State v. The Judge of the Second District Court, 13 Annual 90, Judge Spofford being the organ of the court, well remarked :   " The contesting of votes is not a judicial function only so far as made such by special statute.   Indeed, some may have gone so far as to question whether this is not wholly a matter of administration, which can not, with propriety, be referred to the judicial tribunals at all.   At any rate it is clear that such tribunals can not usurp any greater control over this business than is specially imposed upon them by law.   In the absence of a statutory authorization they are without jurisdiction of the matter *ratione materiæ*."

The Legislature of this State did, by statute, in 1855, delegate to the district courts the power to decide through the agency of juries, contested elections in regard to parish officers.   The jury in such cases has the right to determine which of the parties is entitled to the office, or to refer the matter again to the people to be settled by a new election.   Revised Statutes, pages 279, 280, 281, 282.   Under this statute

the court and jury are clothed with power to examine the grounds of the contestation, and go into all the details of the election necessary to ascertain which candidate received the majority of the legal votes polled at the election. But it is only under this statute that courts can proceed to supervise the counting of votes, correct calculations, purge the polls of illegal votes, and ascertain and establish majorities. It is confined to cases where no commissions have issued. It expressly requires that the contestation shall commence within ten days; that it shall be conducted summarily, and directs the withholding of commissions until the investigation may be completed and the result legally proclaimed.

The subject matter of proceedings under the intrusion act is widely different from that of the statute of 1855. In cases under the intrusion law courts can not go behind commissions legally issued. To determine the validity of a commission they can not under this act go beyond the returns and report of the legal returning officers for all the elections of the State. The returns made by a legal State Board and officially promulgated by that Board as the general returning officers for the State at large, constitutes the basis upon which the Governor is authorized to issue commissions. These returns are, by the act of sixteenth March, 1870, made "*prima facie* evidence in all courts of justice and before all civil officers until set aside, after a contest according to law of the right of any person named therein to hold and exercise the office to which he shall by such return be declared elected."

This *prima facie* evidence, it is provided, may be rebutted and set aside; but this, we apprehend, could only be done by proceedings under the statute of 1855. No authority is delegated to the judiciary under the intrusion act to discuss, modify or abolish the official returns of the regular State returning officers.

As we have already said, it is well settled that the judiciary have no warrant of authority to exercise jurisdiction in matters of elections unless it be expressly delegated by the co-ordinate branch of the Government controlling the political department, and no express authority is granted under the intrusion act to inquire into the correctness of election returns officially promulgated by the legal returning officers. Such a right can not be assumed as an implied power.

The act of 1870, numbered 100, approved March 16, 1870, is the general law under which the elections held at the general election in November, 1872, were conducted, and which controlled as to the formalities of revising and compiling the returns from every part of the State and the making and promulgating the final report.

It may be remarked here that in the case we have referred to in 13 Annual 90, it was held by Judge Spofford that out of the parish of

Orleans there was no law providing for a judicial scrutiny into the votes for any other than "parish officers."

With the character of laws as being odious or entitled to favor, courts have not to deal. If the statute of 1870 is liable to grave criticism it is no fault of the judicial tribunals. It is not for them to declare it infamous even if it be so. But it is their duty to give it effect as a law wherever its provisions apply.

Under the views we have expressed we conclude that in this action, under the intrusion act, the court a qua have improperly gone into the inquiry in regard to the details of the election held in the parish of Lafourche in November, 1872, and the correctness of the official returns promulgated by the returning officers for the State. The contest is therefore limited to the simple question of which of the contestants holds the legal and valid commission. Knoblock presents a commission issued by H. C. Warmoth, Governor, on the fourth of December, 1872. His competitor, a commission issued to him by P. B. S. Pinchback on the 17th of December, 1872. We take judicial cognizance of the fact that on the fourth day of December, 1872, the date of the Warmoth commission the official returns of the election had not been promulgated, and therefore that the issuing the commission was a nullity. The other commission is not liable to this objection and bears *prima facie* proof of its validity and must be recognized.

It is therefore ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed. It is further ordered and adjudged that there be judgment in favor of Frederick Collin; that he be decreed entitled to exercise the duties of the office of parish judge of the parish of Lafourche, and in that capacity to receive the salary and emoluments thereunto appertaining. It is further ordered that J. W. Knoblock pay costs in both courts.

WYLY, J., *dissenting:* Collin *v.* Knoblock, No. 4635; Franklin *v.* Allain, No. 4634; Nicol *v.* Webre, No. 4633; Comeaux *v.* Leblanc, No. 4632.—In each of these cases I dissent, for the reasons given in my dissenting opinion in the case of the State ex rel. J. M. Bonner *v.* B. L. Lynch, this day decided.

H. Franklin v. L. S. Allain, No. 4634; Charles Nicol v. L. A. Webre, No. 4633; L. Comeaux v. E. E. Leblanc, No. 4632. These cases from the Fifteenth Judicial District Court, parish of Lafourche, are similar to that of Collin v. Knoblock, here reported in full, and the reasons assigned for the decisions are the same. Mr. Justice Wyly dissenting.—REPORTER.