## No. 4647.

### STATE ex rel. JOHN M. BONNER *v.* B. L. LYNCH.

The defendant having been returned by the legal returning board of the State as elected judge of the Fourth District Court of New Orleans, and upon that return the Acting Governor having issued a commission to him according to law, it can not be said that one holding an office under such a commission has intruded into, or unlawfully holds the office.

No statute conferring upon the courts the power to try cases of contested elections or title to office, authorizes them to revise the action of the returning board.

The only power the courts have under the intrusion into office law is to decide if one or neither of the contestants has a legal title to the office, and the commission of each is the evidence of that fact.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins*, J. *A. P. Field*, Attorney General. *H. J. Grover*, *W. M. Randolph*, *John H. New*, for relator and appellant. *E. Filleul*, *H. C. Dibble* and *W. H. Cooley*, for respondent and appellee.

Justices concurring: Ludeling, Taliaferro, Howell, Morgan.

TALIAFERRO, J. This is a suit brought under the intrusion act, in the name of John M. Bonner, alleging that at the general election held in November, 1872, he was elected Judge of the Fourth District Court, of New Orleans, having received a plurality of the votes polled for that office, there having been three candidates, T. J. Cooley, B. L. Lynch, the defendant, and himself. That notwithstanding he was duly elected to said office and commissioned by H. C. Warmoth, Governor of the State, the defendant has intruded into and taken possession of the said office, and is unlawfully holding and exercising the duties thereof. He prays to be recognized as Judge of said Fourth District Court, and to be put into possession of the same; that the defendant be decreed an usurper of that office and his pretensions thereto be rejected and not allowed.

The defendant excepted to the proceeding taken against him by the relator on several grounds, among which are the following:

That the relator shows no cause of action; that the matters alleged are not of judicial cognizance; that the contesting of votes is not a judicial function, and the court is without jurisdiction *ratione materiæ*; that the statute under which the relator aims to proceed does not embrace his case; that he is therefore without a standing in court.

The defendant answered by a general denial. He alleges that he was duly elected to the office claimed by the relator, and returned elected by John Lynch, James Longstreet and George E. Bovee, the board of returning officers, and in pursuance thereof that he was duly commissioned by the Acting Governor, P. B. S. Pinchback.

The exceptions were sustained and the suit dismissed. The relator has appealed.

The relator shows a commission from Governor H. C. Warmoth,

dated the thirtieth of November, 1872. The defendant produces a commission from Acting Governor Pinchback, dated the sixteenth of December, 1872.

We decided in the case of Kennard *v.* Morgan, and again in the case of Hughes *v.* Pipkin, that the board of returning officers composed of John Lynch, George E. Bovee, James Longstreet and Jacob Hawkins, was the legal returning board of the State at the late November election. That board, it appears, returned the defendant, Lynch, as elected judge of the Fourth District Court of New Orleans, and upon that return the Acting Governor issued a commission to him according to law. One holding an office under such a commission can not be said to have intruded into or to unlawfully hold the office. But it is said that the returns are only *prima facie* proof of the results of the election. That is true. The question, however, as to the election of officers is a political question, and courts of justice have jurisdiction over them only so far as the political department may have authorized them to exercise jurisdiction. If there were no statute authorizing the trial of contested election cases before courts, they would be without authority to do so. 13 An. 90.

No statute conferring upon the courts the power to try cases of contested elections or title to office authorizes them to revise the action of the returning board. If we were to assume that prerogative, we should have to go still further, and revise the returns of the supervisors of elections, examine the right of voters to vote, and, in short, the courts would become in regard to such cases mere offices for counting, compiling and reporting election returns. The Legislature has seen proper to lodge the power to decide who has or has not been elected in the returning board. It might have conferred that power upon the courts, but it did not. Whether the law be good or bad, it it is our duty to obey its provisions, and not to legislate.

The only power the courts have under the intrusion into office law is to decide if one or neither of the contestants has a legal title to the office, and the commission of each is the evidence of that. It is alleged in the relator's petition that B. L. Lynch was returned as elected to the office of Judge of the Fourth District Court, and that he was commissioned by the Governor. Having no power to revise the action of the board of returning officers, we have nothing to do with the reasons or grounds upon which they arrived at their conclusion.

Admitting everything alleged in the petition to be true, it appears that B. L. Lynch was returned by the legal returning board as having been duly elected Judge of the Fourth District Court of New Orleans, and commissioned thereupon by the acting Governor of the State, and, therefore, it is shown that the petition discloses no cause of action.

For these reasons, and for those we have given more at large in the

·case of Collin v. Knoblock, just decided, we think the defendant enti- tled to judgment in his favor. It is therefore ordered, adjudged and ·decreed that the judgment of the District Court be affirmed with costs.

WYLY, J., *dissenting.* This is a suit brought by the Attorney Gen- ·eral under the "intrusion act" in the name of the State, with John M. Bonner joined as plaintiff, against the defendant, B. L. Lynch, to ex- ·clude him from the office of Judge of the Fourth District Court, on the ground that he usurped, intruded into and unlawfully holds said office, ·and to have said Bonner declared entitled to said office and inducted into the same.

The petition alleges that Lynch is a usurper; that he claims to hold ·said office under color of a commission from acting Governor Pinchback, dated sixteenth December, 1872, based on what purports to be the returns of election held in the city of New Orleans on the fourth of November, 1872, and published in the New Orleans Republican of the ·fifteenth December, 1872, over the signature of John Lynch, James Longstreet and George E. Bovee, acting as a board of returning· ·officers.

It further alleges that the said commission was issued to the said B. L. Lynch through error, and was based on incorrect returns of said elec- ·tion; that at said election B. L. Lynch was not elected by a plurality of the votes polled, but that John M. Bonner, who is joined as plaintiff in the action was; that the office of Judge of the Fourth District Court legally and of right belongs to John M. Bonner, and that he is the proper person to perform the duties and draw the salary of said office.

It alleges that the election that was held in the city of New Orleans ·on the fourth of November, 1872, was conducted in accordance with law and was free from violence, disturbance or undue influence of any kind; that at said election, John M. Bonner received 14,033 legal votes, B. L. Lynch 12,834 votes, and Thomas J. Cooley 9554 votes, and that John M. Bonner, having received a plurality of 1167 votes, was lawfully ·elected judge of the Fourth District Court for the parish of Orleans.

The petition then goes into details, and avers that four hundred and ninety-nine good and legal votes were deposited in the ballot box for John M. Bonner, but were not counted by the Supervisor of Registration and Commissioners of Election, and placed on the sworn lists and statements to be forwarded to the Governor and can- ·vassed by the Returning Officers; that twenty-five of these votes were excluded from the count because the name of the co-plaintiff was mis- spelt or the initials not properly given, and four hundred and seventy- ·four ballots were excluded on the alleged ground that the number of ·the precinct or ward was not written or printed on the outside fold

thereof; that the absence of this formality did not authorize the Supervisor of Registration and the Commissioners of Election to refuse to count these ballots after they had been voted and placed in the ballot-box; that of the ballots thus excluded four hundred and seventeen were on what was known as the Duvigneaud Ticket, whereon John M. Bonner was the candidate for Judge of the Fourth District Court, and fifty-seven were on what was called the Haley Ticket; that the co-plaintiff is now entitled to have these four hundred and ninety-nine ballots counted and added to the other votes received by him. The Commissioners of Election and Supervisor of Registration further erred in counting and not excluding the ballots found in poll eight, of the Third Ward; that a simple inspection of this ballot box conclusively showed that it had been stuffed; that the proper affidavits and the requisite legal proof were made for the exclusion of this poll, and this poll should have been excluded from the count of votes and the final canvass by the Returning Officers; that by improperly including this poll eight of the Third Ward in the count and canvass, three hundred and forty-two votes were added to the number received by the defendant, B. L. Lynch, which should have been excluded altogether.

But that, leaving out the four hundred and ninety-nine ballots that were deposited in the ballot box for J. M. Bonner, and not counted, which should have been added to the vote received by him, and counting for B. L. Lynch the three hundred and forty-two ballots found in poll eight of the Third Ward, which should have been excluded and not counted, J. M. Bonner still received a plurality of the votes cast of more than six hundred.

The petition further alleges that the returns of election compiled by John Lynch, James Longstreet and George E. Bovee, and published in the New Orleans Republican of fifteenth December, 1872, are wholly incorrect and untrue; that by said returns B. L. Lynch is stated to have received twelve thousand nine hundred and forty-five votes, Thomas J. Cooley eight thousand nine hundred and seventy-two votes and J. M. Bonner twelve thousand five hundred and seventy-three votes. But this is not a true and correct compilation and canvass of the votes cast for these respective parties, according to the sworn list or statement made by the supervisors of registration; that the said Lynch, Longstreet and Bovee, acting as returning officers, arbitrarily and without authority of law neglected and refused to make a full and complete canvass of the votes cast, but without any proper evidence or just cause excluded from their returns the entire ballots of several polls which they refused to canvass.

The petition avers that the only poll out of the one hundred and fifteen, into which the precincts of the parish of Orleans were divided, for which there was legal cause for exclusion of votes was poll eight

Third Ward ; that the said Lynch, Longstreet and Bovee should have excluded from their canvass the votes of this poll, but did not; that there was no legal cause for the exclusion of the votes of any other poll, and that they did not have in their possession any legal evidence, such as would justify them in excluding from their canvass the votes of any other poll. These returning officers arbitrarily excluded from their canvass the ballots of certain polls in the Second, Third, Fourth and Twelfth Wards, and the petition gives the number of votes excluded and not canvassed in each of these and the other wards.

The petition also avers that John M. Bonner was appointed and duly commissioned on the thirtieth of November, 1872, as Judge of the Fourth District Court, vice Judge Théard, who had resigned; that he accepted said appointment and acted thereunder; that subsequent to said appointment Governor Warmoth became satisfied that the co-plaintiff, John M. Bonner, had received the plurality of the votes cast at the election for the office of Judge of the Fourth District Court, and issued a commission to him to that effect on the fifth of December, 1872; that these commissions were in due form, and that said Bonner was acting under the same when he was illegally and forcibly ejected from said office on the sixteenth of December, 1872; and that said B. Lynch has been usurping and unlawfully exercising the functions and drawing the salary of the office of Judge of the Fourth District Court since said date.

These are the averments of the petition.

In bar of the action the defendant pleaded the exceptions that the petition discloses no cause of action ; that the matters alleged are not of judicial cognizance; that the contesting of votes is not a judicial function; therefore the court is without jurisdiction *ratione materiæ* ; and that this suit is not authorized by the intrusion act, under which it was brought.

On these exceptions the case was dismissed in the court below, and it was brought to this court on appeal.

I have stated the averments of the petition fully, because the defense is that the petition discloses no cause of action.

Taking the allegations of the plaintiffs to be true (as we must in this trial) I think they show a good cause of action.

The law under which the suit was brought, to wit: act No. 156 of the acts of 1868, is remedial and should therefore be construed liberally.

But giving the statute the strictest construction, in my judgment, it fully covers the case presented for examination.

The purpose of the statute, as expressed in the title, is to provide a remedy against usurpations and intrusions into, or the unlawfully holding or exercising a public office or franchise." It authorizes a suit

to be brought by the Attorney General in the name of the State "when any person usurps, intrudes into, or unlawfully holds any public office."

It provides that service shall be made as in other civil suits, that "the answer shall be filed within legal delays, and such cases shall be tried in preference over all other cases, without being fixed for trial after issue joined." It authorizes the Attorney General to join as plaintiff the person interested, and "in addition to the statement of the cause of action he may also set forth in the complaint the name of the person rightfully entitled to the office, with a statement of his right thereto;" and "if the judgment be against the defendant, and rendered upon the right of the person so alleged to be entitled, and the same be in favor of such person, he shall be entitled, after taking the oath of office and otherwise complying with the requirements of law, to take upon himself the execution of the office; and it shall be his duty immediately thereafter to demand of the defendant in the action all the books and papers pertaining to said office."

It occurs to me that nothing is plainer than that the law authorizes the suit now before the court; that it expressly provides the remedy which the plaintiffs seek in their petition. If all the allegations of the petition be true, (and such must be conceded on the trial of these exceptions,) B. L. Lynch is unlawfully holding the office of Judge of the Fourth District Court, and John M. Bonner is "rightfully entitled" to the same. The law expressly authorizes the inquiry raised in the petition whether Lynch or Bonner is "rightfully entitled" to the office. This rightfulness depends not upon the question who holds the certificate of the Board of Canvassers, but upon the question who was elected by the people. The constitution requires the district judges to be elected; and if Lynch in fact was not elected, although holding the certificate of the Returning Board, he is not rightfully entitled to the office and is unlawfully holding the same."

"A person derives his title to an office by his election, and not by his commission; and if he holds and exercises the functions of an office without having been legally elected, it is an unlawful holding, and he may be ousted at the instance of the State notwithstanding his commission." Bashford v. Barstow, 4 Wis., 567; State ex rel. Attorney General v. Steers, 44 Missouri, 223.

In order, therefore, to determine who is rightfully entitled to the office, it is necessary to look behind the certificate of the Returning Board, because the allegations (which must be taken as true) are, that the canvass was illegal, that the certificate is untrue, and that Bonner received, at least, six hundred more legal votes than Lynch and was actually elected.

Now, the important question is, can the court look beyond the cer-

tificate of the Returning Board? If we can not, there is an end of the case; if we can, the peremptory exceptions must be overruled and the case remanded to the lower court for trial on the merits. As far as my examination extends all the authorities seem to agree that the duties of the Returning Board or the Board of Canvassers are ministerial and not judicial; and such being the case, the legality of their canvass can be examined into by the courts.

Mayo v. Freeland, 10 Mo. 629; State v. Harrison, 38 Mo. 540; State v. Rodman, 43 Mo. 256; Ex parte Heath, 3 Hill 42; Bower v. O'Brien, 2 Ind. 423; People v. Hilliard, 29 Ill. 413; People v. Jones, 19 Ind. 357; Ballou v. York. 13 Shep. 419; Thomson v. Circuit Judge, 9 Ala. 338; People v. Kilduff, 15 Ill. 492; O'Farrel v. Colby, 2 Minn. 180; People v. Van Cleve, 1 Mich. 362; People v. Van Slyck, 4 Cow. 297; Morgan v. Quackenbosh, 22 Barb. 72; Disben v. Smith, 10 Iowa, 212; People v. Cook, 14 Barb. 259; 4 Seld., S. C. 67; Hart v. Harvey, 32 Barb. 55; Attorney General v. Barstow, 4 Wis. 567; Attorney General v. Eli, 4 Wis. 420; State v. Governor, 1 Dutch 331; State v. Clerk of the Passaic, 1 Dutch 354; Marshall v. Kerns, 2 Swan 68; People v. Pease, 27 N. Y. 45; Head's case, 25 Ill. 325.

The intrusion law, as we have seen, authorizes the Attorney General to bring a suit, like the one at bar, "when any person shall usurp, intrude into, or unlawfully hold any public office or franchise;" and it permits the inquiry to be made, "who is rightfully entitled" to the office?

Here I think the law has given the plaintiffs in this case ample power to bring and prosecute this suit, because it clearly authorizes a suit of this character "when any person" shall "unlawfully hold any office" in this State.

With this law in force, can we say there is no relief for the plaintiff? I think not. With the strictest construction, the "Intrusion Act," in my judgment, furnishes the State ample means to oust the defendant, who is accused of unlawfully holding the office of Judge of the Fourth District Court, which accusation must be regarded as true for the purposes of this trial. But where do we find the law putting the frauds and the illegal canvass of the returning board beyond the reach of judicial inquiry? Where is the law authorizing it to disregard the will of the people and set up its own arbitrary decision, the correctness of which cannot be inquired into ?

There is no such law to be found. If there were, the members of this board would be the masters, not the servants of the people. The only powers of this board are found in act No. 100 of the acts of 1870, the act creating it. This statute will be searched in vain to find the extraordinary powers claimed in behalf of this returning board. Not one word will be found in that law placing the illegal acts of that board

18

beyond the reach of judicial inquiry. On the contrary, after defining the duties of these ministerial officers the statute declares that : " The returns of the elections thus made and promulgated shall be *prima facie* evidence in all courts of justice and before all civil officers, until set aside, after a contest according to law of the right of any person named therein to hold and exercise the office to which he shall by such return be declared to be elected."

In the face of this language how can it be pretended that the returns of this board can not be set aside by the courts in a contest according to law ?

Is not a suit under the " intrusion act " a contest according to law, by which the State can inquire whether any of her offices are usurped, intruded into, or unlawfully held ?

In this proceeding the State simply proposes to inquire whether Lynch unlawfully holds the office of judge of the Fourth District Court, alleging that he did not receive a plurality of the legal votes cast, and therefore was not elected. Now, there is no doubt the " intrusion act " permits the State to make the inquiry and it authorizes the court to decide whether Lynch is " rightfully entitled " to the office ; that is, whether he actually received a plurality of the legal votes cast.

The right of the State to recover in this case in no manner depends upon the strength of Bonner's title.

But under the law the Attorney General had the right to join him as plaintiff and set up in the petition a statement of his right to the office. Now, what is the attitude of the defendant in this case ? By his exceptions he admits that he did not receive a plurality of the legal votes cast ; he admits that he received the certificate of election by the arbitrary and illegal canvass of the returning board ; that his commission issued to him through error ; that Bonner was elected and is rightfully entitled to the office. But still he contends that in the face of all these admissions there is no law in Louisiana by which he can be ejected from the office he confessedly usurps and unlawfully holds.

If such were the case it would be a burning shame and a disgrace to Louisiana.

In my judgment the law is ample to give all the relief which the plaintiffs claim at our hands. In this opinion I am not alone, but I am supported by high authority, viz : the Supreme Courts of New York and California, where the same statute prevails. Indeed, our Legislature in 1868 borrowed the intrusion act from New York, copying it word for word, as will be seen by examining the second volume of the Revised Statutes of New York of 1852, page 554, paragraph 432.

Now when the Legislature borrowed the law, is it not fair to presume

it intended the law to be construed as its language plainly indicates its purpose to be, and as it was understood and interpreted by the Supreme Court of New York.

In the People *v.* Pease, 27 N. Y. 45, the court say : " An action is prescribed in the nature of a *quo warranto*, to determine as well the question of usurpation of the person in office as the claim of the person asserting his right thereto.

"In this action the determination disposes as well of the public interest as the private right. It is not of so much importance so far as the public is concerned, which of two claimants shall discharge the duties of an office; but the private right of an individual to the fees and emoluments of an office is properly and legitmately the subject of judicial cognizance, and to adjudicate upon this right it becomes essential to determine who was legally and duly elected or appointed to it, and who is entitled to discharge its duties and receive and enjoy its fees and emoluments. The provisions of the code, in reference to this action, are ample to cover and secure as well the interests of the public as the private rights of the parties. The determination of those rights necessarily leads to an investigation into the title of the claimant to the particular office, and such an investigation must result in a determination of the legality of the election.   \*   \*   \*

" And the certificate of the board of canvassers authorized to canvass the votes given for an elective office, is made evidence of the election of the person therein declared to be elected. But such certificate is only *prima facie* evidence of the title of the person receiving it, to the office therein mentioned. In all cases where the proceeding is by *quo warranto*, or in an action of that nature, it is held that such proceeding is instituted to try the right to the office directly, and it is competent to go behind the certificate, which would otherwise be conclusive, to ascertain the real facts of the case. (The People *v.* Seaman, 5 Denio 409; People *v.* Fergurson, 8 Cow. 102; People *v.* Van Slyck 4 Cow. 297; People *v.* Wail, 20 Wend. 12.)   \*   \*   \*   \*   \* What is it that confers title to the office and the legal right to the reception of its emoluments? It surely is the fact that the greatest number of qualified voters have so declared their wishes at an election held pursuant to law. It is not the canvass or estimate, or certificate which determines the right. These are only the evidences of the right, but the truth may be inquired into and the right ascertained. When it is so ascertained, the legal consequences follow that the person usurping the office is ousted, and the person legally entitled takes the office and its fees.   \*   \*   \*   \*   \*

" It is urged, however, that the act of the inspectors, in receiving and depositing the ballot is judicial, and therefore can not be reviewed in this action. It is supposed that the contrary is satisfactorily

shown, and that the universal practice of the courts, in actions or pro-
ceedings like the present, where they have inquired into the very right
of the case, refutes this assumption. In The People *v.* Van Slyck it
was urged by the counsel of the defendant that the certificate of the
determination of the board of canvassers was conclusive evidence of
the election; that it could neither be impeached nor contradicted;
that the authority exercised by the board of canvassers was judicial,
and that if the Supreme Court had jurisdiction to review the deter-
mination of the board of canvassers, their reviewing power could only
be exercised through the medium of a *certiorari;* and until reversed
in this form it remains valid and conclusive, and can not be questioned
by an information in the nature of a *quo warranto.* These views were
repudiated by the court in that case, which held that the act of the
canvassers was not judicial, but merely ministerial, and that the trial
in *quo warranto* is had upon the right of the party holding the office.
This doctrine was promulgated nearly forty years ago in this State,
and has been acquiesced in and sustained in all cases, and it ought not
now to be disturbed."

In The People *v.* Holden, 28 California 123, where the controversy
was, under the intrusion law, for the office of county judge, the court
say:

"It is first claimed by the appellant that the district court had no
jurisdiction in the premises, and that the only remedy in cases like the
present, is under the statute which prescribes the mode and manner of
contesting elections. No proposition could be more untenable. It is
true the act providing the mode of contesting elections confers upon
any elector of the proper county, the right to contest, at his option,
the election of any person who has been declared duly elected to a
public office to be exercised in and for such county; but this grant of
power to the elector can in no way impair the right of the people in
their sovereign capacity, to inquire into the authority by which any
person assumes to exercise the functions of a public office or franchise,
and to remove him therefrom, if it be made to appear that he is a
usurper, having no legal right thereto."

"The two remedies are distinct, the one belonging to the elector in
his individual capacity as a power granted, and the other to the people
in the right of their sovereignty. Title to office comes from the will
of the people, as expressed through the ballot box, and they have the
prerogative right to enforce their will, when it has been so expressed,
by excluding usurpers and putting in power such as have been chosen
by themselves; to that end they have authorized an action to be
brought in the name of the Attorney General, either upon his own
suggestion or upon the complaint of a private party, against any person
who usurps, intrudes into, or unlawfully holds any public office, civil

or military, or any franchise within this State. See also People *v.* Jones, 20 California, page 50; Searcy *v.* Grow, 15 Cal. 117; People *v.* Cook, 8 N. Y. 67; People *v.* Van Slyck, 4 Cowan 297; People *v.* Vail, 20 Wend. 12.

Our intrusion act authorizes a proceeding in the nature of a *quo warranto.* And under this writ all the authorities agree that a usurper can be excluded from office, and to determine the question of usurpation the courts have ample power to go behind the commission and the certificate of the Board of Canvassers.

In Carpenter *v.* Ely, Fourth Wisconsin 420, where the controversy was for the office of district attorney, the court say: "The duties of these canvassing boards are in the main ministerial. Attorney General *v.* Barstow, 4 Wis. 567; People *v.* Van Slyck, 4 Cow. 322; *Ex parte* Heath, 3 Hill 42; People *v.* Stevens, 5 Hill 616. But perhaps the board of county canvassers might have canvassed the total vote, notwithstanding the informality in the return.

"Conceding, however, the county board decided correctly upon the facts before them, in this proceeding, we are bound to go back and rectify this mistake or omission and count the vote; for it is the election by a plurality of votes which constitutes the right to an office, and that can not be defeated by the mistake, negligence or misconduct of the canvassing boards." And the court held that the relator received a plurality of the legal votes cast for the office and "effect must be given to this election, notwithstanding the certificate of election had been given to the respondent. A canvassing board can not create a right to an office; that must be based upon an election."

In the State *v.* Steers, 44 Missouri, where the controversy was for the office of sheriff, the court say: "To determine upon the legality of votes is a judicial proceeding before a competent court to hear and adjudicate, where the parties interested can appear and present their respective claims. To allow a ministerial officer arbitrarily to reject returns, at his mere caprice or pleasure, is to infringe or destroy the rights of parties, without notice or opportunity to be heard; a thing which the law abhors and prohibits.	*	*	*	The exercise of such power is subversive of the rights of the citizen and dangerous and fatal to the elective franchise." 44 Missouri 223; Howard *v.* Shields, 16 Ohio 184; Ewing *v.* Thompson, 43 Pennsylvania 372; Jenkins *v.* Waldron, 11 John. 114; 6 Cow. 456; 23 Cow. 228.

This is the first time the question has been presented to this court; but it seems to have been presented often to the Supreme Court of other States of the Union, and with singular unanimity they all hold that the courts have power to exclude a usurper at the instance of the State, and to determine the question of usurpation they can go behind the certificate of the returning board.

In view of the express provisions of the intrusion act, and the adjudications of other States to which I have referred, I feel confident that the position I take in this case is correct. Especially as the defendant has not produced a single authority that supports his pretensions. The case of The State v. the Judge of the Second District Court, 13 An. 89, upon which so much reliance is placed, has really no bearing on the case at bar.

There Rousseau sought by mandamus to compel the judge, who was recused, to transfer a certain cause to an adjoining district or refer it to one of the district judges for trial; this court refused the mandamus; because the suit sought to be transferred, did not appear to be authorized by the statute under which it was brought. Therefore, there being no law authorizing the suit, it was no suit; being no suit, no appeal would lie; and no appeal lying, no mandamus could be granted.

I entirely concur in the views expressed in the dissenting opinion of the Chief Justice in that case, because the conclusions upon which the court declined to grant Rousseau relief, were conclusions that could not be legally entertained till there was a trial of the suit, which Rousseau was trying to have transferred to a competent court and tried. The Supreme Court had no original jurisdiction to decide an important issue in Rousseau's case then pending in the district court.

But what was the case of Rousseau, which this court refused to order transferred and tried? It was not a suit brought under the intrusion act. But it was a suit to contest the office of district judge, brought under a statute which only authorized contests for parish offices.

The statute under which he sued did not embrace his case; it was never heard, because this court refused to order it transferred to a competent court for trial. Therefore the remark of Mr. Justice Spofford, that the contesting of votes is not a judicial function, was not necessary to the decision of the mandamus suit; it was a mere *obiter dictum*. But suppose Rousseau's case had been before the court and the decision was that the statute under which he sued did not embrace his case, would that be authority to defeat the present suit brought under a different statute, the "intrusion act," the express provisions of which are found to embrace this case? The remedy provided in the intrusion act in no manner depends upon the existence of the statute under which Rousseau sought relief, to wit: the statute allowing electors, in their individual capacity, to contest an election. People v. Holden, 28 Cal. 123.

"Courts may go behind the determination of State returning boards and correct them by the returns of the district boards, and in turn may correct them by the ballots themselves, if preserved." Cooley on Constitutional Limitations, pages 625, 626.

My conclusion is that this suit is authorized by the intrusion act;

the petition shows a good cause of action ; and the question whether Lynch or Bonner is entitled to the office in dispute is a judicial question, and the cognizance thereof in no manner belongs to the political department.

I believe, therefore, that the exceptions should be overruled and the case remanded to the lower court for trial on the merits.

I therefore dissent from the decision of the majority of the Court in this case.

Rehearing refused.