No. ——

First Circuit Appeal

STATE EX RELATOR R. LEE GARLAND,
DISTRICT ATTORNEY, v. FRANK J.
DIETLEIN

(Dec. 30, 1924, Opinion and Decree.)
(—— 1925, Rehearing Refused.)
(May 5, 1925, Writ of Certiorari and Review to Supreme Court Refused.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Office and Officer— Par. 43, 44, 45.**
In cases under the intrusion law Revised Statutes section 2593, courts cannot go beyond commissions legally issued.

2. **Louisiana Digest—Office and Officer— Par. 26.**
Under Act 236 of 1916 the governor has the power of appointment to fill vacancies occuring in the offices of aldermen in municipalities having a population of less than 5000.

3. **Louisiana Digest—Municipalities — Par. 5, 6.**
Where under Act 59 of 1902 amending section 8 of Act 136 of 1898 the governor issued his proclamation declaring a town to be a city, but failed to publish or record his proclamation as required by these acts, the proclamation is not conclusive and the town is not thereby converted into a city.

(See Act 160 of 1918, Editor's note.)

4. **Louisiana Digest—Municipalities — Par. 5, 6, 8.**
A census made by an individual acting under a resolution of the town, sworn to be correct by this individual, is not conclusive proof of the population of the town because the requirements of Act 59 of 1902 make it necessary that this census be certified to the governor, that the facts under which it is taken be investigated by him, that a proclamation be issued by the governor in response to this census and that this proclamation be published and recorded have not been complied with.

Appeal from the Thirteenth District Court, Parish of St. Landry, Hon. B. H. Pavy, Judge.

This is a suit under the Revised Statutes section 2592 to oust defendant from his office. An exception no cause of action filed by the defendant was overruled.

There was judgment on the merits for the plaintiff and ousted defendant from office. Defendant appealed.

Judgment reversed.

R. Lee Garland, of Opelousas, attorney for plaintiff, appellee.

Sandoz & Sandoz, and M. F. Thompson and John W. Lewis, of Opelousas, attorneys for defendant, appellant.

MOUTON, J. H. D. Lacarde, Sr., was elected Alderman at Large in a municipal election held in Opelousas, June 10, 1924. He died, June 19, 1924, before qualifying to exercise the duties of the office. July 8, 1924, Governor H. L. Fuqua appointed Dietlein, defendant, Alderman at Large, to fill the vacancy in that office caused by the death of Lacarde.

Relator, R. Lee Garland, District Attorney for the Parish of St. Landry, brings this suit under the intrusion in office act, Revised Statutes of Louisiana, Sec. 2593, to oust defendant from said office. Before answering to the merits defendant filed an exception of no cause of action which was overruled.

Section 2593, R. S., the intrusion in office act, authorizes an action against any person who intrudes into or unlawfully holds or exercises any public office, etc.

In the case of John M. Bruner vs. Lynch, reported in the 25 La. Ann. 267, it appeared the returning board had returned Lynch as elected to the office of Judge, in pursuance of which he was commissioned, as such, by the Acting Governor. The court found there was authority by reason of the action of the board for the issuing

of the commission, and held that Lynch could not be ousted under the intrusion in office act. In the case of Collin vs. Knoblock, 25 La. Ann. 263, the court uses this language, quoting: "In cases under the intrusion law courts can not go beyond commissions legally issued."

Act 112, of 1912, says, that in case of a vacancy in any office in the State, Parish or any subdivision thereof, caused by death or otherwise, the same should be filled by election, "provided that the unexpired term is for a longer period than one year". Here, it is alleged by relator that when Lacarde died, his unexpired term of office was to run for a period of more than twelve months from the time of his death. This allegation must, for the purposes of the exception, be taken as true. Grounding himself on this averment, relator avers that the Governor had no right or power, in Law, to appoint Dietlein to the office in question. These allegations are levelled directly against the power of the Governor to appoint. Necessarily, the legality of the commission is questioned here, and the action is permissible, not being in violation of the ruling in 25 La. Ann. 263, where it was held, courts could not, under the intrusion act, go beyond commissions "legally" issued.

Under that Act, actions are authorized against persons unlawfully holding or exercising the functions of a public office. If the Governor had no authority to appoint in the instant case, as alleged, the holding of the office of alderman by defendant was without legal sanction and therefore unlawful, under the terms of the intrusion act.

The exception was properly overruled, although, we think, it should have been referred to the merits as an issue, where it could have been more appropriately disposed of as will hereinafter appear.

## MERITS.

Under the provisions of Act 238, 1916, the Governor is given the power of filling vacancies in Boards of Aldermen of municipalities without regard to the unexpired term of service of the decedent as was, prior to the enactment of this statute, provided for in Act 112, 1912, hereinabove mentioned. Act of 1916, No. 236, gave the Governor this authority only, however, in municipalities where the population is less than five thousand. It is under the provisions of this act that the defendant was appointed. In addition to the allegation that the Governor had no right to appoint because Lacarde, the deceased, had more than one year to serve at the time of his demise, as hereinabove stated, relator also averred that long before and at the time of the appointment, and the filing of his petition, the municipality of Opelousas had a population of over five thousand inhabitants, and had been classified as a City under proper proceedings inaugurated for that purpose, and in compliance with the provisions of Act 136, 1898, and the Acts amendatory thereof, particularly Act 59 of 1902. The foregoing allegations of the relator present the real gravamen of the complaint which is as to whether or not the population of Opelousas, at the time of the appointment, exceeded, or was less than five thousand in number. This being the vital issue presented, we think, as we before stated, that the exception should have been tried with the merits which give a fuller appreciation of the real contest between the parties to this suit.

Municipal corporations of this State were by Act 136, 1898 divided into three classes: cities, towns and villages.

Municipalities having five thousand or more inhabitants were classed as cities. This Act also provided that existing municipalities should be classified according

to their population at the time of the enactment of this statute as would appear by the United States census of 1890, until the class might be changed as is provided for in that Act. Obviously, Opelousas at the time of the adoption of Act 136, 1898, had a population under five thousand, otherwise no measures would have been taken to have it classified as a City as is alleged by relator.

The record shows that the Board of Aldermen of Opelousas applied to Newton C. Blanchard then Governor of Louisiana, to have it classed as a City. The Governor, after stating that a sworn statement of a census ordered by the Aldermen of the Town of Opelousas, and certified to, according to Act 59, of 1902, showed that said Town contained more than five thousand inhabitants, issued his proclamation declaring that the Town of Opelousas from and after the date thereof, June 20, 1908, should be classed as a City. This proclamation of the Governor was, no doubt, issued in compliance and in accordance with the provisions of Act 59, 1902, amending section 8 of Act 136, 1898. Act 59, 1902, after requiring that a copy of the proclamation issued by the Governor be transmitted to the Mayor of the City or Town, provides as follows:

"Such proclamation shall be published and recorded by the municipal authorities of the city, town or village, as an ordinance is required to be published and recorded and shall be conclusive from its issuance of the matter determined by it until there be a new classification under the provisions of this Act."

This proclamation of Governor Blanchard was not, however, either published or recorded as required by the statute. It will be noticed that under the provisions of that statute it is only after the Governor shall have investigated the facts that he can by his proclamation, properly classify a City or Town as the case may be. The Act

also says that after the proclamation is published and recorded, of which there is no proof whatsoever here, it shall be "conclusive from its issuance of the matter determined by it". Evidently, in the case of a town being converted by classification into a "city" as was here attempted to be done, the proclamation, if followed by the requirements of publication and recordation, becomes conclusive of the fact that the number of inhabitants exceeds five thousand. In all probabilities the Legislature required that the proclamation should be published and recorded that the public might be notified, and have the right of contesting the proposed classification should any one in interest so desire, before the proclamation became "conclusive" of all matters "determined by it." In the case of Simar vs. Town of Iota, 149 La. 332, 89 South. 22, the court held that a proclamation by the Governor changing the status of a municipality from that of a town to a city, "did not go into effect until it was recorded and published." This expression of the court is in line with our views above stated.

We think that the requirement of publishing and recording the proclamation found in the statute, as it fixes conclusively the number of inhabitants of a municipality, is imperative, and when not shown that it has been complied with as appears herein, there is no legal proof that a town has a population in excess of 5000, entitling it to a change in its status.

It is shown by the record that I. R. Guidry, acting under a resolution of the Town of Opelousas, took a census of its population which was completed by him, Feb. 28, 1923. He swore to the correctness of this census on June 21, 1924, before E. H. Estorge, Notary Public. The total population of Opelousas under the census so taken by Mr. Guidry amounted to 5918. There is no proof to show that this census was

certified to the Governor, that the facts under which it was taken were ever investigated by him, or that a proclamation was ever issued by the Governor in response to this census.

Clearly, such a census could not be given the effect of fixing the population of Opelousas as being over five thousand or of classifying it as a City, under Act 59, 1902. The record shows that according to the census taken by the United States in 1910, the population of Opelousas, at that time numbered 4,623; and that under the United States census of 1920, the total of the population was 4,437, It is possible that the Board of Aldermen of Opelousas seeing the result of the census by the U. S. Government, sought to have a new census taken under the authority of the Town by Mr. Guidry, so as to have it classified as a City. This census could not, however, have this effect as it was taken without the observance of the essential requirements pointed out in Act 59, 1902, as before stated. As no legal proof was made under the proclamation of Governor Blanchard that the Town of Opelousas had a population of 5000 or over, nor under the census taken subsequently by Mr. Guidry, for the reasons hereinabove stated, Opelousas retained the classification to which it was entitled under the United States census of 1890, which was recognized as the criterion for the classification of municipalities existing at the time of the enactment of Act 136 of 1898, See Sec. 41.

At that time Opelousas, no doubt, had a population of less than 5000, else there would have been no reason for the effort made to have its status changed during the administration of Governor Blanchard and subsequently under the Guidry census. The United States census of 1910, and the last one taken in 1920, both show, for those years, that the population of Opelousas was less then 5000.

It is true that the census for 1910 can not be accepted as the means of ascertaining the population of the municipalities of this State—there being no statutory authority to that effect as was held in McFarlan vs. Jennings, 106 La. 542, 31 South. 62, and when the census was recognized because in the exercise of the power lodged in the municipality, no formalities had to be followed, as was required under Act 59, 1902, but, in view of the fact that the original status of Opelousas had not been changed for the want of the observance of the essential requisites pointed out by the provisions of Act 59 of 1902, it can not be said that the Governor in appointing defendant Alderman at Large, acted without legal right or authority; that the commission to defendant was illegally issued and that defendant is unlawfully exercising the functions of the office in question in violation of the provisions of the intrusion in office act under which this suit is brought.

The judgment rendered below ousting him from office is erroneous. It is therefore avoided and reversed, and the demand of the plaintiff is rejected with cost.

---

## ON APPLICATION FOR A REHEARING.

MOUTON, J. In the application for a rehearing relator says that the question as to what was the population of Opelousas at the time the vacancy occurred in the Office of Alderman at Large is one of fact to be determined by any species of legal evidence. Applicant then says that in our decision we did not undertake to say that the Federal census is not the exclusive method of ascertaining the population of a municipality or city. In referring to the McFarlain vs. Town of Jennings, 106 La. 541, 31 South. 62, we distinctly stated that the Federal census should not be accepted as the means of ascertaining the population

of cities or municipalities of this State. Applicant then refers to McFarlain vs. Town of Jennings, 106 La. 541, 31 South. 62, and from that decision quotes the following: "We think legislation is desirable to provide means for ascertaining the number of persons, but when a power is granted and the law-making power is silent, as in this case, it then becomes a question to be ascertained by a method usually followed in the course of municipal administration".

In that case the question was as to whether or not the Town of Jennings had a population exceeding two thousand so as to give it authority under section 17, of Act 136, 1898, to regulate or prevent the roaming of cattle at large. A census was first taken by the daughter of the Mayor, and subsequently another one, both showing that the Town had a population in excess of two thousand inhabitants. The court in that case held that the State or United States census should not control in ascertaining the population of a town, city or municipality, and said that the Town of Jennings had the authority to establish the number of its inhabitants by the census it had taken. This conclusion of the court, it will be seen by reading page 544 of the opinion, was based on several decisions where it had been held that the Legislature had failed to point out a method to determine the number of persons inhabiting a town or municipality. This is made clear by the following language in which the court refers to these decisions quoting: "In each of these cases it became necessary to establish the population of municipal corporations in which the law-making power had failed to make provision for ascertaining the number of persons." This is certainly not the case here, as Act 59, of 1902, specifically provides for the taking of a census for the classification of the municipalities of this State. This statute specially requires, however, that after a census is taken for the proper classification of a municipality the municipal authorities shall certify the fact to the Governor, duly sworn to by the person employed by such city, town or village, to take such census, the Governor shall investigate the facts; and if he finds the municipality to be wrongfully classed, he shall issue his proclamation in accordance with the facts, and shall correctly classify it, transmitting a copy of his proclamation to the mayor of such city, town or village, such proclamation shall be published and recorded by the municipal authorities of the city, town or village, as an ordinance is required to be published and recorded, and shall be conclusive from its issuance of the matter determined by it until there be a new classification under the provisions of this Act.

As we stated in our original opinion the classification of Opelousas as a City was not effected under the Blanchard administration because the proclamation of Governor Blanchard was never "recorded or published". Simar vs. Town of Iota, 149 La. 332, 89 South. 22. We also held that the census taken by Mr. Guidry was ineffective because he had not followed the requirements of Act 59 of 1902, for the reasons stated in our opinion and which it is unnecessary to repeat in passing on this motion. Evidently, the Town of Opelousas had authorized Mr. Guidry to take the census for the purpose of establishing the fact that it had a population exceeding 5000, and to have it classified as a City, else there would have been no reason for the census. The law specifically authorized such a census, but clearly points out the statutory requirements to be observed. Such being the situation here, it can not be said as was held in 106 La. 542, upon which relator relies "that when a power is granted and the law-making power is silent, as in this case, it then becomes a question to be ascertained

by a method usually followed in the course of municipal administration." In the instant case, the law-making power is not silent, but on the contrary is direct, clear and specific. The Guidry census does not comply with the essential provisions of Act 59 of 1902, and is not proof that the population of Opelousas exceeded 5000 inhabitants at the time the appointment was made or this case was tried. There is no legal proof to take it out of its original classification under the Federal census of 1890, as we have theretofore held.

In Act 136, 1898, it will be noted that municipalities having a population of 5000 or more are classified as cities, those having "less than five thousand" as towns. Act 236, of 1916, which confers on the Governor the power of appointment to fill vacancies occurring in the office of Alderman, gives this right to municipalities "having a population of less than five thousand." Evidently, this power was vested in the Chief Executive on the assumption that the various municipalities of the State had changed their status since the adoption of Act 136 of 1898, and had been properly classified. This is the only guide the Governor can have in exercising this executive function of appointment when a vacancy occurs in a municipality with a population under five thousand. In a situation such as this, with the duty devolving upon him to appoint, it can not be said that in filling a vacancy under the circumstances stated, that he has exceeded his authority, has illegally issued a commission to his appointee, subjecting him to be ousted from office under the intrusion in office act, which, as we construe its provisions, was not enacted to afford relief in a case of this character.

For the foregoing reasons, and those expressed in our original opinion, a copy of which is hereto annexed, the rehearing applied for is refused.