# WOODARD *v.* THE STATE.

1. Where an election has been held in a given county under the provisions of the local prohibition liquor law, embraced in sections 1541 to 1550 of the Political Code, and it has been duly declared that the result was "against the sale," a person indicted under section 451 of the Penal Code, for violating the provisions of this law, can not by special plea or otherwise attack, for any reason, the validity of the election.
2. The evidence in these cases fully warranted the convictions complained of; the penalties imposed were not excessive, and there was no error in refusing to sanction the petitions for certiorari.

Argued December 6, 1897. — Decided March 4, 1898.

Petitions for certiorari.　Before Judge Hart.　Morgan county. October 22, 1897.

*J. H. Holland*, for plaintiff in error.　*H. G. Lewis*, solicitor-general, by *Anderson, Felder & Davis*, and *E. W. Butler*, contra.

　LITTLE, J.　The plaintiff in error was in two separate bills indicted by the grand jury of Morgan county, for the offense of misdemeanor.　The misdemeanor charged in the first bill was, that on the 28th day of March, 1897, he did sell alcoholic, spirituous, and intoxicating and malt liquors.　The second indictment made the same charge, alleging the offense to have been committed on the 10th day of August, 1897.　The two cases were by consent argued together in this court.　The bills of indictment were, by the order of the superior court, transferred to the county court of Morgan county, and on the 13th day of October the plaintiff in error was tried in that court and found guilty in each case.　In the first case the court sentenced him to pay a fine of $100, and in the latter case one of $300. After judgment and sentence, the plaintiff in error presented his petition for certiorari to the judge of the superior court, basing his application for the issuance of the writ on the grounds, in the first case:　1st. Because the judge presiding in the county court erred in striking a special plea interposed by the defendant on his trial.　2d. Because the fine is excessive. 3d. Because the verdict is contrary to the evidence, and without evidence to support it.　The grounds on which the petition for certiorari in the second case was based are the same, with the exception that in the latter an additional ground of error is assigned to a portion of the charge given by the judge of the county court on the trial of the case.　After considering the petitions for certiorari, the judge of the superior court denied the prayer in each case; to which rulings the plaintiff in error excepted and assigns the same as error.　A motion was made in this court to dismiss the writs of error, on certain grounds therein assigned.　On consideration, we overrule the motion to dismiss, and entertain jurisdiction of the cases on their merits.

　1. On arraignment in the county court, plaintiff in error filed in each case a special plea, which alleged "that there is

no valid law in said county against the sale of intoxicating liquor in said county ; that said indictment is founded on the provisions of the local option law [Penal Code, § 451], and the provisions of this act are not legally of force in said county, for the reason that the election held in said county on the 6th day of August, 1896, which resulted in carrying said county for prohibition against the sale of intoxicating · liquors, was and is null and void, for the reason that said election was held under the provisions of section 1 of the general registration act of December 17, 1894 (Acts 1894, p. 115), and that the tax-collector of said county failed to comply with the provisions of sections 4 and 14 of said act, in that said tax-collector did not, for a period of fifteen days prior to the said 6th day of August, 1896, keep the voters books open for registration at his office at the county-site, from 9 o'clock a. m. to 4 o'clock p. m. each day, Sundays alone excepted." The county solicitor demurred to this plea, and the court sustained the demurrer and ordered the plea stricken in each case. It will be noted that the plea admits that an election was held at a given date, under the provisions of the local option law (Political Code, §§ 1541–1550), in Morgan county, and that such election resulted in the adoption of such prohibitory law under the terms of the act. Further than the statements made in this plea, the record contains no evidence of such an election, and the adoption of the prohibitory provisions of our code. We deem the admissions of the plea sufficient to establish the fact. Were it otherwise, however, there is authority for holding that this court will take judicial notice of things which are public in effect and relations, and ought to be known within its jurisdiction, in accordance with the ruling in the case of Combs v. State, 81 Ga. 780, where it was held, that it is not necessary for the State either to allege in the indictment, or to prove before the jury, that such laws are operative in the counties which have adopted them by a vote of the people. So that we find it to be sufficiently shown that the provisions of our code known as the "local option law" were in force in the county of Morgan on the respective dates named in the bills of indictment against the plaintiff in error.

Were the pleas properly stricken on demurrer? We think so. The effect of these special pleas was to present matter on which the court was asked to determine and adjudicate, as a defense to the charges made, that the laws in question were not properly and legally adopted at the election held in the county of Morgan. In other words, the matter of the pleas presented questions for consideration which went to the validity of the election, notwithstanding its result had theretofore been officially declared. In our judgment this can not be done. By section 1545 of the Political Code, it is made the duty of the ordinary of the county where such election has been held, to carefully consolidate the returns, and decide all questions and contests arising under elections held by virtue of this article. And it is further made the duty of the ordinary, if such election should result against the sale, to publish such result once a week for four weeks as indicated. It will be noticed that it is not only the duty of the ordinary to publish the result, but to decide all questions and contests arising under the election. We are of the opinion, from the breadth and scope of the power imposed by this section of the code, that the ordinary was constituted a special tribunal to decide all questions which properly arise under elections held under the provisions of these statutes, and determine all contests which are made before him touching the result of the same, as well as to declare the result. Section 1546 provides another mode of contest, in which the fairness of the election, conduct of the ordinary, etc., may be inquired into by the superior court of Morgan county, on the petition of one tenth of the number of voters who voted at the election. So that the statute has created a tribunal invested with power to pass upon questions and contests which may arise under the election, before the result is declared; and even provides that the superior court of the county, on proper proceedings being taken within twenty days after the result has been declared, shall not only inquire as to the conduct of the ordinary in declaring the result, but also may go into the question of the fairness of the election. Where a tribunal has been invested by law with power to declare the result of an election, the decision of such tribunal is conclusive;

unless provision is made for a further review or contest in a manner prescribed. McCrary on Elections, § 436, lays down the rule to be : "When the statute of a State provides a mode for contesting an election, that mode must be followed," and supports the text by authorities cited. A further rule is, that " where a statutory tribunal for the contest of an election is invested with power to hear and determine questions of law, as well as of fact, it has been held that its acts are conclusive when within its jurisdiction." 1 Met. (Ky.) 533; 10 Bush, 725; 25 La. Ann. 267.

Our own court, in the case of *Freeman* v. *State*, 72 *Ga.* 812, where the act of 1883, on the question of the contest of election of certain officers was in question, said: "In a government where the officers are elective, it is absolutely necessary that there should be some quick and summary way to determine contests of this character; public policy requires that the machinery of the government shall be put in operation, and this might be delayed for a long or indefinite time, if left to be determined by a jury and the ordinary tribunals of the country." In the case of *Skrine* v. *Jackson*, 73 *Ga.* 382, on the question of contests under the "fence" law, this court says, that "as the legislature has provided in the act under which this election was held how the same was to be determined, and no remedy existing at common law, or other provision by statute by which the courts can inquire into the legality of this election, then the decision of the ordinary is final and conclusive." In that case, as here, the proceedings instituted were not filed until after the result had been declared by the ordinary, and on that subject the court in the same case says: "The bill came too late, after the ordinary had acted and proclaimed the result, to have authorized the injunction to issue. If there was any remedy at all, it should have been sought before the ordinary had acted and the result had been proclaimed. All things must have an ending; there must be some finality; and we think that this matter had an end and final termination when the ordinary decided and proclaimed the result of the election." See also, *Tharpe* v. *Hardison*, 69 *Ga.* 283; *Caldwell* v. *Barrett*, 73 *Ga.* 604. Chief Justice Jackson in the case of *Dyson* v. *Pope*, 71

*Ga.* 205, construing the act of 1880–81, which provides, on the question of "fence" elections, that "the returns of said election shall be made to the ordinary of said county, and after examining the same and deciding upon all questions which may arise out of said election he shall proclaim the result as aforesaid," said, that an application for mandamus directed to the ordinary, commanding him to examine and count the returns of the election, was too late when made after the result was proclaimed; that the questions must be made before the ordinary proclaims the result.

There is another view of the question, which is equally conclusive against the special plea filed by the defendant. The plea sets out matter which impeaches the validity of the election, and which might have been made a ground for contesting the election, and on it the plaintiff in error might, by following the provisions of the law, have been heard by the ordinary before the result was declared. He did not choose to adopt this course; and as he did not, he can not now come and attack the validity of the election in this collateral way. The rule is, that a defendant in a prosecution for selling intoxicating liquors, contrary to a local option law, can not attack the validity of the election adopting the law. On this point the Supreme Court of North Carolina says: "The ascertainment and declaration of the result of the election was prima facie correct, and it was conclusive until, in a proper action brought for the purpose, the true result otherwise should be ascertained and declared by a judicial determination. The law contemplates and intends, generally, that the result of an election, as determined by the proper election officers, shall stand and be effective until it shall be regularly contested and reversed or adjudged to be void by a tribunal having jurisdiction for that purpose. It would lead to confusion and ridiculous absurdity to allow the validity and result of an election to be contested every time the result of it, as determined by the election officers, became material collaterally in a litigation. In the present case, the defendant might be able to prove facts showing that the election mentioned was void for one cause or another. Another defendant, charged with a like offense, might be less fortunate, and

the State might show that it was regular and valid; and so on indefinitely. The law does not provide for such continual and repeated contests in every case that may arise. It intends that one contest, properly instituted for the purpose, shall establish the validity or invalidity of the election questioned." 101 N. C. 684; 98 N. C. 768; 9 S. W. Rep. 710. There can be no question as to the correctness of the ruling of the judge of the county court in sustaining the demurrer to the special plea, nor in the refusal of the judge of the superior court to sanction the petition for certiorari on this ground.

2. We find no merit in the ground set out in the petition for certiorari, that the fine was excessive in either case. We will not undertake, in a case like this, to review the discretion of the presiding judge in fixing the amount of a fine within the limit prescribed by law. When the voters of a county have, under the provisions of law, declared that intoxicating liquors shall not be sold within its limits, their will is the law; and we know of no class of misdemeanors which deserve more censure than a violation of this act where it is in force. At best, sales of liquor in small quantities, when sanctioned by law, and when surrounded by the regulations given as a protection against the results, frequently result in evil; but when in violation of law, secretly and privately, one furnishes an opportunity to the inexperience of youth to indulge in dissipation, or surreptitiously caters to a diseased appetite which indulgence has produced, the very fact that the traffic is illegitimate, forbidden, and not of easy access, brings attendant evils not always found to accompany legitimate sales. In our estimation, the amount of punishment inflicted in these cases was moderate; and had the fines been much larger, there would have been no occasion for us to interfere.

Neither is there merit in the exception taken to the charge in the last of the two cases, in relation to reasonable doubts. An inspection of the charge which was delivered by the court shows that the doctrine of reasonable doubts was clearly and fully given to the jury.

The remaining grounds are, that the verdicts in the two cases are contrary to the evidence, and without evidence to

support them.    An examination of the brief of evidence contained in the record induces us to think that these grounds are not well taken, but that the verdict in each case is fully warranted and authorized by the evidence; and there was, in our judgment, no error in refusing to sanction the petitions for certiorari.

*Judgment in each case affirmed.    All the Justices concurring.*