27224. HENLEY, *alias* REAVES, *alias* KRASNER, *v.* THE STATE.

Decided March 4, 1939.

*Evans & Milam, Paul W. Hughes, Loeb C. Ketzky,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw,* contra.

MacIntyre, J. The defendant, Mrs. Ollie Henley, alias Theresa Reaves, alias Mrs. D. Krasner, was found "guilty of obtaining money on fictitious checks." The defendant filed a motion for new trial and amended the same. To the overruling of her motion as amended she excepts. The evidence discloses that Williman was a clerk for the 551 Ponce de Leon Hotel, and was on duty as

such at the time he cashed the checks for the defendant; that he cashed the checks with money of the hotel; that the defendant did not receive all cash in the transactions, but paid her hotel bill, which included meals, flowers, and other charges due the hotel; that after Williman took the checks, he did nothing to collect them; that Williman turned them over to Richardson, the manager of the hotel; that in turn Richardson, the manager of the hotel, tried to collect the money from the accused but failed; and that "ultimately I [Williman] am going to have to pay that twenty-nine dollars back [the total amount of the checks cashed]. No, I have not paid any of it at all yet." The Code, § 26-3918, declares: "Any person who shall designedly, by color of any counterfeit letter or writing, made in any other person's name, or fictitious name, obtain from any person money or other valuable thing, with intent to defraud any person, mercantile house, body corporate, or company of the same, shall be punished by imprisonment and labor in the penitentiary for not less than two nor more than seven years." One count of the indictment in the instant case, which was drawn under the above-quoted Code section, charged that the defendant "did designedly by color of the following counterfeit check and writing, to wit: [verbatim copy of the check] same made in the fictitious name of Mrs. D. Krasner, obtain of and from J. D. Williman ten dollars in money of the value of $10 *of the property of the said J. D. Williman,* with intent to defraud the said J. D. Williman, contrary to the laws of said State," etc. (Italics ours.) The State contends that the words italicized in this count of the indictment ("of the property of the said J. D. Williman") are merely surplusage and need not be proved.

Conceding that an accusation drawn under the Code, § 26-3918, would have been sufficient by merely charging that the defendant "obtained of and from J. D. Williman ten dollars in money of the value of $10 with the intent to defraud the said J. D. Williman contrary to the laws of the State," etc, if the defendant had been convicted under such a general charge in such an indictment he could not, within the period of the statute of limitations, that is within two years prior to the filing of the indictment, have been tried again for obtaining money from Williman with the intent to defraud him, whether he obtained from him money belonging to him, the hotel, to any guest of the hotel, or to any one else who

might have left it in his mere custody as clerk of such hotel, even though the defendant had so obtained such money with the intent to defraud on a hundred different occasions. However, when the State particularized the transaction, and charged in the indictment that the particular money, which the defendant was being charged with thus "obtaining," was the money belonging to Williman individually, even if such an allegation were not necessary, it became material by its averment, "but whether intrinsically material, or rendered material by the particularity of statement employed in making the charge, the burden devolves upon the State to prove those allegations necessary to show the defendant's guilt of the nominal charge preferred against him, but also to go further and prove that the crime was committed (in the particular instance identified by the accusation) 'in the manner and form alleged,' in order that the defendant may be protected from being again placed in jeopardy for the *same transaction*." *Caswell* v. *State, 5 Ga. App.* 483, 487 (63 S. E. 566). The law does not contemplate that the defendant should be thrust into a situation of standing trial, and there forced to prove that the transactions were the same, where a proper indictment would itself disclose such to be the fact without extraneous proof. *Martin* v. *State, 43 Ga. App. 287,* 291 (158 S. E. 635) ; *Reddick* v. *State, 15 Ga. App.* 437, 441 (83 S. E. 675).

In 1 Wharton on Criminal Evidence (10th ed.), 368, § 140, it is said that the words in an indictment which are unnecessarily inserted, such as "the averment of ownership, may be expunged when immaterial," as " . . where a robbery was alleged to have been committed in the dwelling house of A. B., it was held that a variance as to this was inconsequential, as the crime could be committed there or elsewhere," and that text writer then lays down a rule for determining when words are surplusage, which rule he states to be that "the test to apply in all cases is, do the words in question negative the crime intended to be charged? If they do, they are harmful, otherwise not." In the instant case the State, it is true, can say that if the words were stricken from the indictment the indictment would still be good, but it can not truly say that these words are surplusage and need not be proved, for if we treat them as surplusage, we change the kind of crime charged in the indictment from a particular crime to another crime more general in

its nature, and it would be unjust to the defendant to say that such words are so inconsequential as to become immaterial. If the offense meant to be charged was the general one under this Code section, the words in question change and consequently in effect negative the general offense intended to be charged by charging the particular offense. They (the words) can not be treated as surplusage for the reason that they are inconsequential and not harmful. "There can be no good reason in requiring proof of allegations which are impertinent and useless; the identity of those which are essential to the claim or charge with the proof being all that is material." Wharton's Criminal Evidence, 367, § 139. Thus, if an indictment charged larceny from the house, the allegation that the property was stolen from the house could not be said to be surplusage, for this is what differentiates it from simple larceny, and even if the evidence showed that the property was stolen, but there was no proof that it was not taken from the house, a verdict of larceny from the house could not stand. The State could not at that late date, instead of making the proof correspond with the allegations in the indictment, make the allegations correspond with the proof by saying that the State treated the allegation that the property was taken from the house as merely surplusage. On the other hand, if the indictment charged simple larceny, and the State proved larceny from the house, a verdict of guilty of simple larceny would stand; however, if an indictment charged a named person dressed in a blue suit of clothes with committing a battery upon another named person dressed in a grey suit of clothes, the words dressed in a blue suit of clothes and dressed in a grey suit of clothes would be surplusage, for the defendant would be guilty if he committed the particular battery charged, whatever might be the color of the clothes of either person named in the indictment. Proof of the color of the clothes would be impertinent and useless and harmless. *Sanders* v. *State,* No. 27171, 59 *Ga. App.* post (1 S. E. 2d); *Sparks* v. *State,* 48 *Ga. App.* 498, 505 (173 S. E. 216); *Fulford* v. *State,* 50 *Ga.* 591, 593.

In the instant case, the very words in question ("of the property of the said J. D. Williman") used in the indictment are the ones which will reduce the crime charged from a general charge, under Code, § 26-3918, for "obtaining" money with the intent to

defraud any person, to a particular crime of "obtaining" Williman's money and his only. The words in question must be proved, because they identify the particular offense and distinguish it from all other instances including an instance where the money was obtained with the intent to defraud the hotel. The words in question are .so averred as descriptive matter that they become essential to identify the particular instance of the taking of Williman's money, and being so essential must be proved. In short, the indictment charges the "obtaining" of Williman's money with the intent to defraud, and the proof must show that Williman's money and not the hotel's money was the money so taken. *O'Neal* v. *State,* 10 *Ga. App.* 474 (73 S. E. 696) ; *Jackson* v. *State,* 21 *Ga. App.* 146 (94 S. E. 55).

"It is important to note that there is a distinction between possession and mere custody. The owner of goods, by delivering them to another, may give such other person the mere custody or charge of the goods, the technical possession remaining in himself, or he may, by such delivery, divest himself of the possession of the goods." *Grant* v. *State,* 125 *Ga.* 259, 261 (54 S. E. 191) ; *Rivers* v. *State,* 46 *Ga. App.* 778 (4) (169 S. E. 260). It is evident in the case at bar that the hotel did not divest itself of the "technical possession" of the money obtained by the defendant. Williman had "mere custody or charge" of the money, and was not the owner, nor did he have the "technical possession" of the money, nor did he have a special property in the money as in the case of a bailee or pledgee. Therefore, the money obtained by the defendant was not "the property of the said J. D. Williman" as charged in the indictment. It has been said, "If the owner of goods, being in possession thereof, places them in the keeping of his servant, either by delivery or permission, the possession still remains in the owner, and the servant has merely the custody. A servant is one who is employed to render personal service to another otherwise than in the pursuit of an independent calling, and who, in such service, remains entirely under the control and direction of the employer." 18 Am. & Eng. Enc. L. 474; *Wall* v. *State,* 75 *Ga.* 474. There may be a special or qualified delivery which does not amount to delivery of possession, but merely amounts to the passing of custody only. "The owner of goods may deliver them to another person who is not a servant, under such circumstances as to pass only the custody and

not the possession. This occurs where the purpose of delivery is that the goods may be used or some act done in relation to them in the owner's presence or on his premises." 18 Am. & Eng. Enc. L. 475.

The instant case is not a case where the actual possession was in one person, as a bailee or agent, and the constructive possession and ownership was in another person, the bailor or principal. Here the hotel retained the control and also retained legally the possession of the property, and it was obviously in the possession of the hotel and not in the ostensible or averred possession of the clerk. Hildebrand v. People, 15 Am. R. 435, 438. The purpose of the delivery by the hotel to the clerk was that all acts done in relation to the money should be done on the owner's premises, that is, in the hotel. Thus, the hotel made a special or qualified delivery which did not amount to a delivery of the possession but merely amounted to a delivery of the custody of the money only, as in the case of *O'Neal* v. *State,* supra, where it was said, "The evidence as to ownership was that Robert Hutchinson, as assistant cashier, paid the check presented to him by the accused, 'with funds of the LaGrange National Bank;' that the $30 so paid was not his property, but was the property of the bank." There the allegation in the indictment was that the person cheated and defrauded was Robert Hutchinson, and the facts proved showed that the bank and not Hutchinson, as an individual, was cheated and defrauded; and in *Jackson* v. *State,* supra, it was said, "In larceny the ownership may be laid in the agent, but not in a servant. 'A mere servant has only the custody of goods, and he can maintain no action for them; hence he has in them no ownership.' Ownership may be laid in 'any other person having the lawful possession of the article, in distinction from a bare custody thereof.' 2 Bishop Crim. Procedure, §§ 721, 722."

There being no proof that Williman, at the time of the commission of the offense charged, was the legal owner of the money, or that he was in the "technical possession" of the property, or that he had such a special property in the money as would sustain this allegation of the indictment, the proof did not conform with this essential allegation and the variance was fatal. *O'Neal* v. *State,* supra; *Oliver* v. *State,* 15 *Ga. App.* 452 (2, 3) (83 S. E. 641); Roscoe on Evidence, 422.

The indictment in the present case had four counts. Counts

2 and 4 were stricken on demurrer, and the defendant was convicted on counts 1 and 3. The rulings above were with reference to count 3. These rulings also control the questions raised as to count 1.

*Judgment reversed. Guerry, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. The averment in the indictment that the money, fraudulently obtained by the defendants, "was the property of J. D. Williman," was unnecessary and mere surplusage, since it was "not descriptive of any material element of the crime, and, therefore, it was not incumbent upon the State to prove it. 'This case does not come within the rule that an immaterial description of a material fact must be proved, but, place being unimportant, it was rather an instance of an immaterial description of an immaterial fact.' See *Hall* v. *State,* 120 *Ga.* 142, 144 (47 S. E. 519)." *Howell* v. *State,* 29 *Ga. App.* 174 (2) (114 S. E. 717). In the crime charged in the instant case the *ownership* of the property obtained by the defendant was immaterial and unimportant, and the allegation in the indictment as to such ownership was "an instance of an immaterial description of an immaterial fact," as stated by the Supreme Court in the *Hall* case, supra. See also, to the same effect, 31 C. J. 837, § 445; *Shrouder* v. *State,* 121 *Ga.* 615 (49 S. E. 702); *Ager* v. *State,* 2 *Ga. App.* 158 (58 S. E. 374); *Dunson* v. *State,* 25 *Ga. App.* 172 (2) (102 S. E. 899); *Sparks* v. *State,* 48 *Ga. App.* 498 (2), 503 (173 S. E. 216); *Golden* v. *State,* 45 *Ga. App.* 501 (165 S. E. 299); *Innes* v. *State,* 19 *Ga. App.* 271 (5) (91 S. E. 339); *Berrien* v. *State,* 156 *Ga.* 380 (6) (119 S. E. 300). Moreover, in the instant case there was no variance, as to the ownership of the property, between the allegations of the indictment and the proof, since the undisputed evidence showed that Williman was in the actual lawful possession of the property, although he was holding it merely as the agent or bailee of another. In *Thomas* v. *State,* 27 *Ga. App.* 38 (2) (107 S. E. 418), this court held: "Proof that certain property alleged to have been stolen was taken from the lawful possession of the person named in the indictment as the owner thereof is sufficient to support the allegation of ownership, although the legal title be in another." See also *Wimbish* v. *State,* 89 *Ga.* 294 (15 S. E. 325); *Bradley* v. *State,* 2 *Ga. App.* 622 (2) (58 S. E. 1064); *Bennett* v. *State,* 28 *Ga. App.* 235 (110 S. E. 756). In the instant case, as stated in 25 Cyc.

91-92, "The ostensible ownership is, however, enough to justify the description. So far as the thief [or defrauder] is concerned, he can not question the title of the apparent owner. . . The absolute legal owner may be named as such; or any person may be named as owner who may be taken as owner so far as the thief [or defrauder] is concerned, which ordinarily includes any possessor who has an interest in the property or *exercises any control or management.*" (Italics mine.) The above-cited authorities are, in principle, controlling in this case, and the judgment should be affirmed.