30400. GARRETT *v.* THE STATE.

Decided April 8, 1944. Rehearing denied July 24, 1944.

*R. B. Williamson, E. L. Smith,* for plaintiff in error.

*Joe L. Houston, solicitor,* contra.

MacIntyre, J. 1. It is provided in the act approved February 3, 1938 (Ga. L. Ex. Sess., 1937-1938, p. 103, sec. 27, Ga. Code Ann., § 58-1077), that: "Any person found in possession or control of more than one quart of spirituous, vinous, or alcoholic liquor, in any county of this State (except such counties in which liquor may be legally sold or transported under the terms of this chapter) shall be guilty of a misdemeanor and, upon conviction, punishable as in cases of misdemeanors." Sections 4 and 27 of the act (Ga. Code Ann., §§ 58-1008, 58-1078), make an exception in which it would be lawful for a person to possess more than one quart of intoxicating liquor when the possession is in a county which has voted "wet," as provided by law, and becomes what is known in common parlance as a "wet county." The accusation charged a crime in violation of a general law created by the prohibition statute of this State, and conforms substantially to the statute, for it is not necessary that an accusation, based on a violation of this general law, should aver that the accused does not belong to the class of persons who may lawfully possess intoxicating liquor in a "wet county," and thus are excepted from the operation of the general law.

If the possession of more than one quart of such prohibited liquors be in a "wet county," the burden is on the defendant to show that fact, and thus show that he comes within one of the exceptions to the general law. The accusation charged that the defendant "did then and there, unlawfully and with force and arms, have and control and possess more than one quart of spirituous alcoholic liquors, distilled alcoholic liquors, whisky, rum, brandy, and gin, the container of which did bear the revenue stamps required by the State of Georgia." Thus the accusation was not subject to general or special demurrer. *Kitchens* v. *State,* supra; *Carter* v. *State,* supra; *Hennon* v. *State,* 62 *Ga. App.* 485 (7 S. E. 2d, 921); *Smith* v. *State,* 62 *Ga. App.* 484 (8 S. E. 2d, 94); *Frierson* v. *State,* 67 *Ga. App.* 829 (4) (21 S. E. 2d, 438).

■ All the essential elements of the crime charged were proved, and there was no sufficient proof that the defendant belonged to

any class of persons excepted from the general provisions of the act. *Frierson* v. *State,* supra.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

ON MOTION FOR REHEARING.

MacINTYRE, J. We had thought that the ruling that "the accusation was not subject to general or special demurrer" covered the point raised on the motion for rehearing, "which is that the accusation was demurrable in that it does not charge the defendant with being in possession unlawfully of the beverages specified, in a county in which the said beverages may not be legally transported." However, the ruling may not be as specific as it should have been with reference to this point. Therefore we say that in order for the defendant to transport he must of necessity possess the prohibited liquors specified in the accusation, and it is not necessary that the accusation, charging the possession of such liquors and based upon the violation of the general law created by the prohibition statute, should allege that the accused does not belong to that class of persons who may legally transport the specified liquors in a dry county, and thus are excepted from the general law. This is a matter of defense, and there is no merit to this contention.

There were other assignments of error. They involve propositions which are well settled, and we did not think that a discussion of them would be of any practical benefit. However, since the plaintiff in error, in his motion for a rehearing, states that we overlooked them, we will say, with reference thereto that the defendant asked the privilege of the court to set up in his amended motion for a new trial two affidavits, in which it was stated that there was certain evidence which existed at the time of the defendant's trial, and which the record undisputedly discloses that the defendant and his attorney knew existed at the time of the trial, and that the only reason given for not introducing this evidence was that the defendant's attorney preferred not to do so in order that he might obtain the opening and concluding argument in the case. Such affidavits could not be a basis for an amendment to the motion for a new trial; they could only have the effect of unnecessarily encumbering the record. The judge denied the request and held that he did not think it proper under the law for the two affidavits to be allowed by the court as a part of the said amended

motion. The judge did not commit reversible error in so doing. An affiant in one of the affidavits swore in part that one of the jurors who tried the case had subsequently to the trial told the affiant that one of the real reasons why the jury returned a verdict of guilty was, "that if they turned the defendant loose it would mean other people would be coming to Poulan and selling whisky," —Poulan being the town in Worth County where the evidence for the State showed the defendant possessed the whiskey. The juror's idea seems to have agreed, at least in part, with Blackstone, i. e., that the object of the final cause of human punishment "is not by way of atonement or expiation for the crime committed; for that must be left to the just determination of the Supreme Being; but as a precaution against future offences of the same kind. This is effected three ways: either by the amendment of the offender himself; for which purpose all corporal punishment, fines, and temporary exile and imprisonment, are inflicted: or, by deterring others by the dread of his example from offending in the like way 'ut poena (as Tully expresses it) ad paucos, metus ad omnes perveniat' (that few may suffer, but all may dread punishment); which gives rise to all ignominious punishments, and to such executions of justice as are open and public: or, lastly, by depriving the party injured of the power to do future mischief; which is effected by either putting him to death or condemning him to perpetual confinement, slavery, or exile. The same one end, of preventing future crimes, is endeavored to be answered by each of these three species of punishment. The public gains equal security, whether the offender himself be amended by wholesome correction, or whether he be disabled from doing any further harm; and if the penalty fails of both these effects, as it may do, still the terror of his example remains as a warning to other citizens." 2 Cooley's Blackstone (4th ed.), p. 1222.

The judge did not err in not allowing this portion of the affidavit to be incorporated in the amendment to the motion for a new trial.

*Rehearing denied. Broyles, C. J., and Gardner, J., concur.*