32928.  BIENERT *v.* THE STATE.

Decided May 16, 1950.  Rehearing denied July 28, 1950.

*Miller, Miller & Miller*, for plaintiff in error.

*Arnall, Golden & Gregory, Candler, Cox & McClain, Edward Andrews, Smith, Kilpatrick, Cody, Rogers & McClatchey, Morgan Belser, Kurt Holland*, as amici curiae.

*Oscar L. Long, Solicitor*, contra.

MacIntyre, P. J.   Georgia as a whole is a dry State and the general prohibition law as contained in Code §§ 58-101, 58-102, et seq., generally known as the "bone dry" law, is in force and effect in every county of the State unless the prohibited liquors have been legalized by statute or statute and election held in conformity with the statute in the individual counties.   Prior to the effective date of the act of 1937-38 (Ga. Laws, 1937-38 Ex. Sess., p. 103) the sale of distilled spirits and whisky was a violation of the prohibition law.   Bibb County, the county in which the crime was alleged to have been committed had held, under the provisions of the act of 1937-38 (Ga. Laws, 1937-38, Ex. Sess. p. 103), an election and the county had voted "wet"; that is it had voted to legalize and control in such wet county the liquors described in the act; and, distilled spirits and whisky, being described in the act, are some of the liquors which are legalized and controlled by the provisions of the act.   One of the controls provided for in the act is that a wholesaler must have a wholesaler's license which "shall authorize the holder to engage in the sale of distilled spirits [which includes whisky] at wholesale by selling to the holder of a wholesale license or the holder of a retail license for the purpose of resale.   Code (Ann. Supp.), § 58-1025.   This being a dry State, the reason why a wholesaler, as such, can sell distilled spirits (which includes whisky) to anyone is that the provisions of the act of 1937-38 (Ga. Laws, 1937-38, Ex. Sess. p. 103) gives him such a right, if he obtains a license as provided by the act.   If this provision is not complied with by obtaining a wholesaler's license, a wholesaler, as such, cannot sell the prohibited liquors to anyone.   If

that provision is complied with, he may, as plainly stated in such provision, sell to another wholesaler or retailer holding a proper license. By this provision, he is made an exception to; that is, he is removed from the operation of the general law as to these purchasers, but as to none other. *Frierson* v. *State*, 67 *Ga. App.* 829 (21 S. E. 2d, 438); *Garrett* v. *State*, 71 *Ga. App.* 449 (31 S. E. 2d, 244). The general prohibition law (Code § 58-101 et seq., as amended by the act of 1937-38, p. 103) is one law with a local option feature. See *Crabb* v. *State*, 88 *Ga.* 584, 588 (15 S. E. 455); *Wheat* v. *Bainbridge*, 168 *Ga.* 479, 480 (148 S. E. 332); *Mayes* v. *Daniel*, 186 *Ga.* 345, 356 (198 S. E. 535), and is a general law as it relates to both counties, dry and wet. It provides that in any county having an election as provided in the amendatory act of 1937-38 (Ga. Laws, 1937-38, Ex. Sess. p. 103), where "a majority of the votes cast shall be in favor of taxing and controlling alcoholic beverages and liquors, the manufacture, possession, distribution, and sale of such alcoholic beverages and liquors in such county shall be permitted in accordance with the provisions of this Chapter." Code (Ann. Supp.), § 58-1008, meaning in accordance with the provisions of the general prohibition law (Code § 58-101 et seq. as amended by the act of 1937-38 (Ga. Laws, 1937-38, Ex. Sess., p. 103).

No statute has been adopted since the Code of 1933 purporting to authorize the sale of distilled spirits without a license from some authority and this is true even as to counties where the sale is not prohibited by the act of 1937-38 (in wet counties). Distilled spirits and whisky are still prohibited liquors under Code § 58-101 et seq., as amended by the act of 1937-38 (Ga. Laws, 1937-38 et seq., p. 103), in any county where the sale is not prohibited (in wet counties) if the party selling has not obtained a license as provided by law. In other words, the sale must be in a county where it is not prohibited and the seller must also have a license permitting him to sell it in order for the sale of the distilled spirits to be removed from the operation of the law as stated in Code § 58-101 et seq., and amended by the act of 1937-38. See, in this connection, *Sprayberry* v. *Wyatt*, 203 *Ga.* 27, 35 (45 S. E. 2d, 625). The amendatory act of 1937-38 (Ga. L. 1937-38, Ex. Sess., p. 103), states that it shall be known as the

Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors and provides: "Licenses which may be issued under the authority of this Chapter shall be as set forth in sections 58-1024 to 58-1026 [§ 58-1024, to manufacturers; § 58-1025, to wholesalers; § 58-1026, to retailers].)) Code (Ann. Supp.), § 58-1023. Code (Ann. Supp.), § 58-1025 provides: "A wholesaler's license shall authorize the holder to engage in the sale of distilled spirits at wholesale, by selling to the holder of a wholesale license or to the holder of a retail license for the purpose of resale." Thus a wholesaler, as such, cannot obtain a·license to sell distilled spirits except to another wholesaler who holds a license or to a retailer who holds a license, for purposes of resale, and if he cannot obtain a license for any other purpose and he sells to some other person the sale to such other person is not removed from the operation of the law as stated in Code § 58-101 et seq., as amended by the act of 1937-38 (Ga. Laws, 1937-38, Ex. Sess., p. 103). We think, therefore, that the accusation charges the commission of a penal offense under the laws of this State and is not subject to the demurrer.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*

ON MOTION FOR REHEARING.

MacINTYRE, P. J. The act of 1937-38 (Ga. L. 1937-38, Ex. Sess., p. 103) in its title and in its body expressly states that it is an amendatory act, and when we certified a question relative to such act to the Supreme Court, in answering the question, that court, in *Pierce* v. *State*, 200 *Ga.* 384, 386 (37 S. E. 2d, 201), stated: "The ·act approved February 3, 1938 (Ga. L. 1937-38, Ex. Sess., p. 103), known as the 'Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors,' very substantially *amended* the then-existing prohibition law in certain respects." (Emphasis added.) We are convinced therefore that the act of 1937-38 is an amendatory act.

The case of *Leonard* v. *State of Georgia*, ex rel. *Lanier*, 204 *Ga.* 465 (50 S. E. 2d, 212), cited by counsel for the defendant, does not hold that the general prohibition law, as embodied in the "bone dry" law as a whole, Code § 58-101 et seq., is repealed directly or by implication in Georgia in wet counties; but merely held that the act of 1937-38 (Ga. L. 1937-38, Ex. Sess., p. 103, 111, as embodied in Code, Ann. Supp., § 58-1029) was a part

of a later revising statute which clearly covered the whole sub-ject-matter of an older statute, as embodied in the act of 1890-91 (Ga. L. 1890-91, pp. 132, 133; Code, Ann. Supp., § 58-601) and that the older act as embodied in Code, Ann. Supp., § 58-601 was impliedly "repealed or suspended" by the later act of 1937-38 (Ga. L. 1937-38, Ex. Sess., p. 103; Code, Ann. Supp., § 58-1029) because it was necessary, on account of the repugnancy be-tween them, in order to make the later act operative, to abro-gate the older law and that the later act only abrogated the older law to the extent that it is inconsistent and irreconcilable with the later act. Some of the older general local option statutes, when dealing with earlier general acts, "suspended" the prior general acts when a county had voted dry. *Crabb* v. *State,* 88 *Ga.* 584, 588 (supra). Some of the general local option acts, under like circumstances, used the words "removed from the operation of" the general act by the later general local op-tion act. We think that in the *Leonard* case the court was using the words "repealed or suspended" more in the sense of sus-pended than repealed and that the *Leonard* case is not in con-flict with what is said in the main opinion in the instant case.

In *Mayes* v. *Daniel,* 186 *Ga.* 345, 354 (4), the only question presented in division four of that opinion was whether the act in question "violates art. 3, sec. 7, par. 17, of the Constitution, which declares: 'No law, or section of the Code, shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made.' The plaintiffs allege: (1) Section 2 of said act seeks to amend a general law of the State by ref-erence only to a title number of the Code. (2) Section 3 of said act seeks to amend a general law of the State by reference only to chapter numbers of the Code." The court decided this ques-tion as follows: "When we consider the manifest purpose of the constitutional provision, which was none other than that the members of the General Assembly should be fully put on notice of what law it was that the bill proposed to amend (See *Ful-lington* v. *Williams,* 98 *Ga.* 807, 810, 27 S. E. 183), and reading the act itself, we can not believe that the act should be struck down by reason of any repugnancy to the provision of the Con-

stitution above quoted." Any other statement of law in division 4 of that opinion enunciated by the court by way of illustration, argument, analogy, or suggestion was not essential to the determination of the question there presented and is obiter dictum.

This same idea, as expressed in *Mayes* v. *Daniel,* supra, is expressed in *Barber* v. *Housing Authority of the City of Rome,* 189 *Ga.* 155, 159 (5 S. E. 2d, 425), thus: concerning the rule where there is a failure to describe sufficiently, under art. 3, sec. 7, par. 17, of the Constitution, an act to be amended, the purpose of the requirement is to put the members of the General Assembly on reasonable notice as to the law intended to be amended or repealed so that they may ascertain if and how an old law is intended to be modified. This later case cites and relies upon the *Mayes* case, supra, as authority and cites *Fullington* v. *Wliliams,* supra; *Adam* v. *Wright,* 84 *Ga.* 720 (11 S. E. 893); *Town of Maysville* v. *Smith,* 132 *Ga.* 316, 318-320 (64 S. E. 131); *Tyson* v. *Doerun,* 155 *Ga.* 367 (2), 371 (116 S. E. 615); *Holland* v. *State,* 155 *Ga.* 795 (2), 800 (118 S. E. 203).

The statement in *Womack* v. *State,* 60 *Ga. App.* 761, 762 (5 S. E. 2d, 96), upon which counsel for defendant relies, that in wet counties "the old law, making it a penal offense to possess whisky or to keep it for sale at a place of business, has been directly repealed," we think, is not an accurate statement. While the statement is too broad, the case was correctly decided on its particular facts, but we think that the effect of the act of 1937-38 (Ga. L. 1937-38, Ex. Sess., p. 103), which permits counties to vote wet, was merely intended to suspend or remove the liquors therein described from the operation of the law as stated in Code § 58-101 et seq.

Where a county has voted wet under the provisions of the act in question, as amended, that county can be restored to its former dry status by merely holding an election under the provisions of such act as amended. No new statute repealing this act, which permits a county to vote wet, is necessary in order for the wet county to return to its dry status; for, under the act in question as amended, by an election as provided for therein the suspension of the general prohibition law, which had been brought about by the county's voting wet, could be removed and the

county thereby restored to its dry status. Thus, under this act as amended a county may alternately at its pleasure, within the limitations of the statute, vote wet or vote dry.

We do not think that the act of 1937-38 (Ga. L. 1937-38, Ex. Sess., p. 103) directly repealed the entire general prohibition law in wet counties.

*Rehearing denied. Gardner and Townsend, JJ., concur.*