33319. CAPITOL DISTRIBUTING CO. *et al.* v. THE STATE.

Decided February 9, 1951.

304

*C. E. Gregory Jr., Arnall, Golden & Gregory, Candler, Cox & McClain, Morgan S. Belser, J. Kurt Holland, Smith, Kilpatrick, Cody, Rogers & McClatchey, Hoke Smith, Spalding, Sibley, Troutman & Kelley, James Sibley, Douglas, Evans & Cole, W. E. Andrews, Stonewall H. Dyer, Marvin G. Russell,* for plaintiffs in error.

*Paul Webb, Solicitor-General, William Hall,* contra.

TOWNSEND, J. (After stating the foregoing facts.) Fulton County is a wet county, a fact of which the courts will take judicial cognizance. *Leonard v. State,* 204 *Ga.* 465 (4-a) (50 S. E. 2d, 212); *Combs v. State,* 81 *Ga.* 780 (8 S. E. 318); *Bass v. State,* 1 *Ga. App.* 790 (57 S. E. 1054); *Woodard v. State,* 103 *Ga.* 496 (30 S. E. 522); *Oglesby v. State,* 121 *Ga.* 602 (49 S. E. 706); *Central of Ga. Ry. Co. v. Gwynes,* 153 *Ga.* 606 (113 S. E. 183). The indictment in this case is drawn under the provisions of the act of 1938 to legalize and control alcoholic liquors and beverages (Ga. L. 1937-38, page 103 et seq.) as codified in Chapter 58-10 of the Code Supplement. Code (Ann. Supp.) § 58-1068 provides that, "Nothing in this Chapter shall be construed as giving any person a right to sell spirituous

liquors as herein defined, but the manufacture, sale and distribution of spirituous liquors is declared to be a privilege in this State and not a right." The sale of liquor is therefore a misdemeanor under the provisions of Code (Ann. Supp.) § 58-1069 and § 58-1070 providing in substance that the violation of any of the provisions, rules and regulations of Chapter 58-10 shall be a misdemeanor unless it is lawfully done, that is, done in accordance with one or more of the only three provisions of the law setting out how liquor may legally be sold in a wet county. These provisions are embodied in Code (Ann. Supp.) § 58-1024, regulating distiller's licenses, § 58-1025, regulating wholesaler's licenses, and § 58-1026, regulating retail licenses. Any sale which is in a wet county and is made in accordance with one of these three Code sections is legal. Any sale not so made is illegal. The indictment expressly states that the accused do not have retailers' licenses. It is silent as to whether they have wholesalers' licenses or manufacturers' licenses. It charges that the persons to whom the sales were made, whether known or unknown, were not the holders of wholesale licenses and not the holders of retail licenses. The indictment is silent as to whether or not these persons were holders of manufacturers' licenses.

The indictment is therefore ambiguous in that it is not drawn in accordance with any of the three licensing provisions of the act, and it is accordingly impossible to say with any certainty whether the State intended to charge a violation of a wholesale license, a violation of a license to manufacture (which allows sales in bulk to other manufacturers or wholesalers) or a sale without a license of any kind. Further, accepting all the allegations of the indictment as true, it does not appear that the sales charged were unlawful, since the indictment fails to allege that either the accused or the purchasers did not have a distiller's license as provided by Code (Ann. Supp.) § 58-1024. Brief of counsel for the State contains the following statement: "The indictment in the case at bar charges an unlawful sale of whisky a sale not authorized by Chapter 58-10 of the Code; a sale which could not have been legally licensed by the State." However, the sale alleged in the indictment could have been legally licensed by the State, under the provisions of Code (Ann.

Supp.) § 58-1024, as above pointed out, and for this reason the indictment is insufficient.

An indictment which states the offense in the language of the Code, or so plainly that the nature of the offense charged may be easily understood by the jury, is a good indictment. Code, § 27-701. If not stated in the language of the Code, it must allege every essential element of the crime charged. *O'Brien* v. *State*, 109 *Ga.* 51 (35 S. E. 112); *Mathews* v. *State*, 16 *Ga. App.* 312 (85 S. E. 284). Where a commodity may be legally sold under a license, an indictment alleging the unlawful sale of such commodity must negative the fact that the accused had a license, under the terms of which the sale would have been legal. See *Plemmons* v. *State*, 58 *Ga. App.* 131 (198 S. E. 104); *Carter* v. *State*, 60 *Ga. App.* 758 (5 S. E. 2d, 244); *Mathis* v. *State*, 93 *Ga.* 38 (18 S. E. 996); *Elkins* v. *State*, 13 *Ga.* 435; State *v.* Haden, 15 Mo. 447; State *v.* Holder, 133 N. C. 709 (45 S. E. 862).

This does not mean that it is necessary to the validity of the indictment that every legal method for the making of a sale of intoxicating beverages in a wet county must be separately and explicitly negatived. An indictment for the unlawful sale of spirituous liquors in a wet county of this State, in order to describe the crime with legal sufficiency, must either allege the unlawful manner in which the sale was made, or it must allege a sale and negative all lawful ways for such sale to be consummated. The indictment here fails in both these respects. It does not point out the particular unlawful manner in which the liquor was sold, nor does it negative a lawful manner in which the sale could have been made, which is by virtue of a distiller's license.

It follows that the trial court erred in overruling the general demurrer which each of the defendants interposed to the indictment.

*Judgment reversed. Gardner, J., concurs. MacIntyre, P. J., concurs specially.*

MacIntyre, P. J., concurring specially. Code § 58-102 made it unlawful for any person anywhere in Georgia to sell any of the prohibited liquors listed therein, of which distilled spirituous

liquors was one. This is a general law. Immediately prior to the act of 1937-38 (Ga. L., 1937-38, Ex. Sess., p. 103), an indictment which alleged a sale of more than two quarts of distilled, spirituous liquors to a named person on a named date within two years prior to the finding of the indictment would have been a good indictment under Code § 58-102, which was a general law that made it an offense to sell the prohibited liquors referred to therein, of which distilled spirits was one, to any person anywhere in Georgia, and would not have been subject to demurrer, either general or special. *Williams* v. *State,* 89 *Ga.* 483 (15 S. E. 552) ; *Maddox* v. *State,* 118 *Ga.* 33 (44 S. E. 806) ; *Lee* v. *State,* 184 *Ga.* 327 (191 S. E. 256).

The fact that subsequently the act of 1937-38, amending the bone-dry law, of which Code § 58-102 was a part, stated therein that Chapters 58-1, 58-2, and 58-3 shall not apply to that section of such amendatory act, would not have made an indictment in like language subject to demurrer if returned after such amendatory act was passed. In other words, every essential ingredient of the general law contained in Code § 58-102 (the bone-dry law) is alleged. Georgia is a dry State and the State does not have to allege that the crime was committed in a dry or wet county. See, in this connection, *Atkins* v. *Manning,* 206 *Ga.* 219 (56 S. E. 2d, 260). Such an indictment is sufficient even though exceptions are created by subsequent clauses or subsequent independent sections. The exception is a matter of defense. The subsequent sections in the amendatory act of 1937-38 relating to selling such prohibited liquors (listed in Code § 58-102) are not a part of the description of the offense, but are exceptions created, not in the enacting clause, but by subsequent independent sections in the amendatory part of the act. It merely prevents the offense of selling distilled spirituous liquors as defined in Code § 58-102 (the general law) from having a universal operation or application. If the accused belonged to one of the classes of persons to which the statute is not to be applied, it was incumbent upon him to prove it, and the State was not bound to carry the burden of proving that he did not. *Kitchens* v. *State,* 116 *Ga.* 847, 849 (43 S. E. 256) ; *Elkins* v. *State,* 13 *Ga.* 435, 439.

The act of 1937-38 (Ga. L. 1937-38, Ex. Sess., p. 103) both

in its title and its body expressly states that it is an amendatory act and when it is amended it becomes one general act with many exceptions and none of the exceptions comes within the enacting clause of the general prohibition law as it existed prior thereto, but all are placed in subsequent sections or subsequent statutes separate from that of the enacting clause and need not be noticed in an accusatory pleading; but when a person comes with an exception, it is a matter of defense. 153 A.L.R. 1291. It might be noted here that if this is not an amendatory act, that section of the act of 1937-38 which allows a person to have one quart of liquor in a dry county for personal use, etc., might be construed as violating Article III, Section 7, Paragraph 17 of the Constitution, but if the act as amended covers the whole subject matter, it would not be violative of this provision of the Constitution. See, in this connection, *Atkins* v. *Manning,* 206 *Ga.* 219 (supra); *Leonard* v. *State,* 204 *Ga.* 465 (2) (50 S. E. 2d, 212).

In the *Elkins* case, supra, it is stated in headnote 1: "Where a statute contains provisos and exceptions in distinct clauses, it is not necessary to state in the indictment that the defendant does not come within the exceptions, or to negative the provisos which it contains; but on the contrary, if the exceptions themselves are stated in the enacting clause, it will be necessary to negative them, in order that the description of the crime may, in all respects, correspond with the statute." However in that case it was in effect said that applying that rule to the statute then under consideration, the exceptions there were in the enacting clause and the statute was not a general law, but that the enacting clause excepted certain corporations and towns from its operation. But it was also said in the *Elkins* case (at page 439): "The distinction is this: when a statute contains provisos and exceptions in distinct clauses, it is not necessary to state in the indictment that the defendant does not come within the exceptions, or to negative the provisos which it contains." I think that this last quoted statement is applicable to the case here under consideration.

In the *Kitchens* case, supra, it is stated: "In the *Conyers* case the accused was indicted under a statute which made it penal for the keeper of a billiard table to permit a minor to play bil-

liards without the consent of his parent or guardian. It was not an offense to permit minors to play billiards, but it became an offense only when they did so without the consent of their parents or guardians; and consequently the absence of consent was an essential ingredient of the offense. If the statute had provided that it should be an offense to permit minors to play billiards and then provided that the statute should not apply to that class of minors who had previously obtained the consent of their parents or guardians"—it would not have been necessary to negative the exceptions; that is, it would not be necessary that an indictment based upon that statute should aver that the accused did not belong to that class of persons thus excepted from the operation of the law. The legislature in passing the act of 1937-38 might have had this illustration in mind.

It might be noted that the act of 1937-38 stated that Chapters 58-1, 58-2, and 58-3, shall not apply and it seems to me that this was but saying, as was said in the *Kitchens* case, that where a statute provides in general terms that the commission of a given act by any person or under all' circumstances shall constitute a penal offense, and then provides that the law shall not apply to a given class of persons or to a specified set of circumstances, it is not necessary to aver that the accused does not belong to the class of persons thus excepted from the operation of the law.

In *Rumph* v. *State*, 119 *Ga.* 121, 123 (45 S. E. 1002), it is said: "When the statute provides that the commission of an act by any person, or under all circumstances, shall constitute an offense, and then declares that the provisions of the act shall not apply to a particular class of persons, or to a specified set of circumstances, the burden is on the accused to show that he comes within some of the exceptions." See also *Frierson* v. *State*, 67 *Ga. App.* 829 (21 S. E. 2d, 438).

"According to the principle ruled in *Carter* v. *The State*, 68 *Ga.* 826, and *Stringfield* v. *The State*, 25 *Ga.* 474, an indictment founded on the general local option liquor law of September 18, 1885 [Ga. L. 1884-85, p. 121], which charges that the accused unlawfully and for a valuable consideration did directly sell a quantity of intoxicating liquors, contrary to the laws of the State, etc., is sufficient without specifying the kind or quantity sold, the price or the name of the purchaser. Nor is it necessary

for the indictment to negative any of the exceptions contained in the statute, such exceptions not being inserted in the enacting clause which defines and describes the offense." *Williams* v. *State*, 89 *Ga.* 483 (15 S. E. 552). In the Reporter's statement of the facts in the *Williams* case, it appears that "the defendant's demurrer was overruled, and he excepted. Among the grounds of demurrer were, that no offense is charged; that it is not alleged to whom the liquor was sold; that the kind of intoxicating liquor is not alleged; and that 'the indictment does not bring the defendant within the exceptions made under the general local option act.'" Act of 1884-85 (Ga. L. 1884-85, p. 131); *Maddox* v. *State*, supra; *Hicks* v. *State*, 108 *Ga.* 749 (32 S. E. 665).

"It is not necessary in an indictment for the illegal sale of intoxicating liquors to name specifically the person to whom the sale was made. But if the indictment does name such person, testimony that a sale was made to any other person would be irrelevant and inadmissible, unless the person to whom the liquor was sold was acting for the person named in the indictment as making the purchase, and that fact was known to the defendant when he made the sale. . ." *Finch* v. *State*, 6 *Ga. App.* 338 (2) (64 S. E. 1007).

The charging or material part of count 1 of the indictment was that the accuseds *"did unlawfully* sell for a valuable consideration a quantity in excess of *two quarts of distilled spirituous liquors* to a person not the holder of a liquor retail license issued by the State Revenue Commissioner and not the holder of a liquor wholesale license issued by the State Revenue Commissioner, *the name of said person being F. W. Fisher,* said accused having no retail license issued by the State Revenue Commissioner to sell said liquors,—*contrary to the laws of the said State, the good order, peace and dignity thereof."* Under the prohibition law as amended by the act of 1937-38, it is a criminal offense to sell distilled spirituous liquors to any person even in a county where an election is held under the prohibition law as amended by the act of 1937-38 (Ga. L. 1937-38, Ex. Sess., p. 103), and "a majority of the votes cast are in favor of taxing and controlling alcoholic beverages and liquors, and the manufacture, possession, distribution, and sale of such alcoholic beverages and liquors are permitted in accordance with the pro-

hibition law as amended by the act of 1937-38; unless he has a manufacturer's license which authorizes the holder to sell in bulk to another such holder and to sell in sealed containers to the holder of a wholesale license; or unless he has a wholesale license which authorizes the holder to sell to the holder of a wholesale license or to the holder of a retail license; or unless he has a retail license which authorizes the holder to sell to the public, provided the whisky is in unbroken containers. If the indictment here meant to charge a general offense under the general prohibition law as amended by the act of 1937-38, the mere use of the words above italicized in the indictment would have been sufficient. For "it is a long established and well-settled rule that where the exception is placed in a section or statute separate from that of the enacting clause, it is a matter of defense and need not be noticed in the accusatory pleading." .153 A.L.R. 1292. The case of *Williams* v. *State*, supra, and many other cases of the Supreme Court and of the Court of Appeals are cited as coming under this rule. In addition thereto, see the recent cases of *Carter* v. *State*, 60 *Ga. App.* 758 (5 S. E. 2d, 244), *Jackson* v. *State*, 64 *Ga. App.* 648 (13 S. E. 2d, 898), *Bienert* v. *State*, 82 *Ga. App.* 179 (60 S. E. 2d, 575), and *Colbert* v. *State*, 80 *Ga. App.* 641 (56 S. E. 2d, 830). In the two latter cases certiorari was denied by the Supreme Court. If all the exceptions to the general prohibition law, known as the bone-dry law, had to be negatived it would almost make a book. Then could the other words in this count of the indictment be expunged as surplusage and immaterial? In Wharton, Criminal Evidence (10th ed.), p. 688, § 140, it is said that the words in an indictment which are unnecessarily inserted as "where a robbery was alleged to have been committed in the dwelling house of A. B., it was held that a variation as to this was inconsequential as the crime could be committed there or elsewhere," and the textwriter then lays down a rule for determining when words are surplusage, which rule he states to be that: "the test to apply in all cases is, do the words in question negative the crime intended to be charged? If they do, they are harmful, otherwise not." In the instant case the State, it is true, can say that if the words were stricken from the indictment the indictment would still be good, but it cannot truly say that

these words are surplusage and need not be proved, for if we treat them as surplusage, we change the kind of crime charged in the indictment from a particular crime to another crime more general in its nature, and it would be unjust to the defendant to say that such words are so inconsequential as to become immaterial. *Henley* v. *State,* 59 *Ga. App.* 595, 597 (2 S. E. 2d, 139). So, when the State inserted the other words not italicized in the indictment, it, in effect, negatived the general offense of violating the general prohibition law and when it particularized the particular transaction of selling to an unlicensed person and charged a particular offense in a wet county under the prohibition law as amended by the act of 1937-38, by alleging a sale to a person named F. W. Fisher, not a holder of a retail liquor license issued by the State Revenue Commissioner; but did not further allege that the accuseds were not the holders of a liquor manufacturer's license issued by the State Revenue Commissioner, the indictment, because of this neglect, fails to state a complete crime, since the sale charged may have been a sale to another (F. W. Fisher) the holder of a manufacturer's license. The reason for this is that such a sale is permitted by the express terms of the prohibition law as amended by the act of 1937-38. Thus count 1 is subject to general demurrer. Each of the remaining counts of the indictment, with the exception of the last, was identical with count 1 except for the dates of the alleged transactions and the names of the alleged purchasers and each of those counts was subject to general demurrer for the same reason as count 1. The final count (count 11) in alleging a sale "to other persons other than those named in the preceding counts," is particularized to sales to persons other than those named in the preceding counts and is subject to the same objections as the preceding counts.