32136. OWEN *v.* THE STATE.

Stone & Stone, for plaintiff in error.

Phillip Sheffield, A. H. Gray, contra.

MacIntyre, P. J. █ The defendant was charge with violating the prohibition law. The material parts of the indictment charged that Claude Owen and Mrs. Irene Owen, the defendant in this case, did "have, control, and possess more than one quart of spirituous, vinous liquors and beverages, to wit: wine, said wine then and there not being domestic wine and then and there not being made from Georgia fruits, berries, grapes and other products grown in Georgia, the said wine being then and there intoxicating and then and there being made from products grown outside of the State of Georgia, contrary to the laws of the State." The defendant demurred to this indictment on the ground that it "fails to set out any offense under the laws of Georgia."

When we hereinafter refer to "domestic wine" we are referring to fermented wine or wines having such alcoholic content as fermentation may produce and made from crops grown in Georgia, either wild or cultivated, grapes, fruits, or berries, for the grower's family's use, for his or her family or guests. See Code (Ann. Supp.), § 58-801.

When we refer to a "dry county" we mean a county in which the sale, manufacture, possession, or control of intoxicating liquors has not been legalized by a county election as provided by the prohibition acts.

Code § 58-101 provides: "The term 'prohibited liquors and beverages,' as used in any law to promote temperance or to suppress the evils of intemperance, shall include the following: (1) Alcohol, alcoholic liquors, spirituous liquors and all mixed liquors

any part of which is spirituous, foreign or domestic spirits, or rectified or distilled spirits; absinthe, whisky, brandy, rum, gin; (2) vinous liquors and beverages." Code § 58-201 provides: (We have transposed for the purpose of clarification part of the first sentence of this section into part of the last sentence so as to read as follows:) "It shall be unlawful for any . . individual . . to have, control, or possess (any spirituous, vinous . . fermented, or intoxicating liquors, or any of the prohibited liquors or beverages defined in § 58-101, or any alcoholic compound . . or liquor whether intended for beverage purposes or not, but which can be diluted, and when so diluted may be used as a beverage and will produce intoxication) save as is hereinafter excepted." This is a general law. "When the statute provides that the commission of an act by any person, or under all circumstances, shall constitute an offense, and then declares that the provisions of the act shall not apply to a particular class of persons, or to a specified set of circumstances, the burden is on the accused to show that he comes within some of the exceptions" of the general law. *Rumph* v. *State,* 119 *Ga.* 121, 123 (45 S. E. 1002). It might here be noted that the Wine Act of 1935 had the effect of legalizing *domestic* wine (made an exception to the general law) and also made it free from taxation. See Code, § 58-801. The subsequent Wine Acts all have continued to legalize the mere possession of *domestic* wine but have imposed a tax on domestic wine as well as on foreign wine, but none of the wine acts legalized the possession generally of other wines. The act of 1937-38 (Ga. L. Ex. Sess., 1937-38, pp. 103, 122), codified as Code (Ann. Supp.), § 58-1073, makes an exception to the general law and provides that "it shall not be unlawful for any person to have and possess for use and not for sale, in any county (wet or dry) of the State, one quart of the liquors and beverages described in this Chapter," provided the person complies with certain conditions precedent stated therein, such as properly stamped, etc. The same act, codified as Code (Ann. Supp.), § 58-1077, provides that it is a misdemeanor for any person to have in his possession or control more than one quart of spirituous, vinous, or alcoholic liquors in any dry county of this State.

The indictment not only alleges as one of the criminal acts done in violation of the prohibition law, the possession of more

than one quart of vinous liquors and beverages; to wit, wine, but also alleges that such liquor was intoxicating and further that it was not domestic wine. Vinous liquors in the form of wine, not domestic, which are intoxicating are one of the prohibited liquors under the general prohibition law. Code, § 58-201. As to the exception of one quart of the liquors from the operation of the general prohibition law, see Code (Ann. Supp.), § 58-1073. The indictment in the instant case charged the defendant with the illegal possession of one of the prohibited liquors in a dry county. The crime alleged is a violation of the general prohibition law; thus, the indictment charged a crime and conformed substantially to the statute, and was not subject to the general demurrer. *Carter* v. *State*, 60 *Ga. App.* 758 (5 S. E. 2d, 244); *Frierson* v. *State*, 67 *Ga. App.* 829 (21 S. E. 2d, 438); *Garrett* v. *State*, 71 *Ga. App.* 449 (31 S. E. 2d, 244).

We do not think the defendant's contention, that under the provisions of the prohibition laws, and particularly under the provisions of Code (Ann. Supp.), § 58-1058, it is no longer illegal merely to possess wine (foreign or domestic) unless the alcoholic content is more than twenty-one percent by volume, is sound. The acts of 1935 (Ga. L. 1935, p. 492, Code, § 58-801) had the effect of legalizing the manufacture, sale, and possession of light *domestic* wines and exempted such wines from taxation. The acts of 1937 (Ga. L. 1937, pp. 851, 852, Code (Ann. Supp.), § 58-801), repealed the non-tax provision on domestic wine and established a tax schedule for both foreign and domestic wines, based upon the alcoholic content by volume. See Code (Ann. Supp.), § 58-901. The act of 1937-38 (Ga. L., Ex. Sess. 1937-38, pp. 103, 117, Code (Ann. Supp.), § 58-1058) merely added a tax schedule for "fortified" wines, described in the act as wines to which distilled spirits have been added, and included the proviso that all *fortified* wines having an alcoholic content of more than twenty-one percent by volume should, except for purposes of taxation, be placed under the same regulatory provisions as alcohol and distilled spirits. Except for the regulatory provision in Code (Ann. Supp.) § 58-1058 with regard to fortified wines having more than twenty-one percent by volume, and the provision of Code § 58-801, legalizing the manufacture, sale, and possession of light domestic wines, these sections of the law, far from

legalizing the possession of foreign wines generally, are exclusively for purposes of taxation and in no way affect the general regulatory provisions of the general prohibition law.

■ ■ Headnotes 2 and 3 are self-explanatory.

■ The evidence was to the effect that on December 18, 1946, the defendant was found to be in possession of eleven cases of wine in pints, fourteen cases of wine in "fifths" or quarts, fifteen bottles of wine in pints, and ten bottles of wine in fifths. There are twelve bottles of wine to the case in fifths, and twenty-four bottles of wine to the case in pints. The case was marked 2.4 gallons to a case. This wine was found in the defendant's home one-half mile west of the corporate limits of the City of Blakely in Early County. As physical evidence the State introduced three bottles of wine identified by the witness Howell, Sheriff of Early County, together with the labels thereon which read: "1. Liberty, California red port wine, Alcohol 19% to 21% by volume. Bottled by Georgia Wine Company, Atlanta, Georgia. 2. LaBoheme, California white port, Alcohol 20% by volume. Bottled at our winery by LaBoheme Vinegar Company, Fresno, California. 3. Empress, California Sherry wine, Alcohol 19% to 21% by volume. Bottled by Georgia Wine Co., Atlanta, Georgia." These bottles bore the official revenue stamp of Georgia for wine. The defendant admitted that the wine contained in the three bottles introduced by the State was not made from Georgia-grown fruits, berries or any Georgia products, and that the wine contained in these bottles was made and manufactured outside of the State of Georgia. In view of what has been said in division one of this opinion, we think the foregoing evidence was sufficient to authorize the jury to find the defendant guilty as charged in the indictment.

■ In view of what has been ruled above, the excerpts from the charge of the court to the jury complained of in special grounds 5, 6, and 7 of the motion for a new trial, whether strictly accurate or not, were harmless to the defendant and are, therefore, without merit.

The court did not err in overruling the demurrer to the indictment or in overruling the motion for a new trial.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*