32551. COLBERT *v.* THE STATE.

Decided October 27, 1949. Rehearing denied December 17, 1949.

642

*Maddox & Maddox,* for plaintiff in error.

*W. T. Maddox, Solicitor-General,* contra.

MacINTYRE, P. J. 1. Georgia as a whole is a dry state, and the general prohibition law as contained in Code §§ 58-101, 58-201 et seq., generally known as the "bone dry" law, is of force and effect in every county of the State, unless the prohibited liquors have been legalized by statute or by statute and election held in conformity with them in the individual counties. Prior to the passage of the act of 1935, approved March 23, 1935 (Ga. L. 1935, p. 492, Code, § 58-801 et seq.) the possession of intoxicating wines in general was a violation of the prohibition law. In *Cone* v. *State,* 184 *Ga.* 316, 325 (191 S. E. 250), it is stated: "If the referendum contained in the wine act of March 23, 1935, was *valid,* the election which was held in pursuance thereof and which resulted in favor of ratification had the effect of legalizing the possession of wine produced from Georgia 'grapes, fruits, or berries,' as provided in the act, but did not authorize the possession of wines not so produced. If the referendum was *invalid* as contended, and if the remainder of the act should still be given effect, the assignment of error fails in like manner, because this statute does not purport to change the prior law to the extent of legalizing the possession or controlling of wines in general, but, as stated above, is limited to wines produced from Georgia fruits. Finally, if the entire act is invalid for any reason urged by the defendant, then the prior law as to wine is unchanged, with the result that the possession of wine of any origin is prohibited, and constitutes an offense under the law."

The act of 1937 (Ga. L. 1937, p. 851, Code, Ann. Supp., § 58-901 et seq.), amending the act of 1935, certainly down to section 3 of the act of 1937, does not indicate any intention to deal with any wines other than the Georgia product wines, the definitions for which are identical in the original wine act of 1935 and the amending act of 1937: "Sec. 1. Be it and it is hereby enacted by the General Assembly of Georgia, that from and after the passage of this act, all persons growing crops, either wild or cultivated, of grapes, fruits, or berries, may make therefrom fermented wine, or wines, having such alcoholic content as fermentation may produce, for his family use, for his, or her, family, and guests, free from any taxation whatever." The phrase, "free from any taxation whatever," is stricken from the act of 1937. If the act of 1937 had stopped at the end of section 2, it would have left the possession of wines, other than the "Georgia product wines" referred to in section 3, an offense under the general prohibition law. Section 3 of the act of 1937 provides: "That from and after the passage of this act, the following taxes shall be levied and collected on all wines manufactured, sold, possessed, or offered for sale within the State of Georgia: (a) On domestic wines having an alcoholic strength of not more than 14% alcohol by volume, 10 cents per gallon. On domestic wines of between 14% and 21% alcoholic strength by volume, 30 cents per gallon. *Domestic wines are hereby defined and declared to be those wines manufactured wholly within this State from fruits and berries grown only within the State of Georgia and produced by natural fermentation.* Wine manufactured in Georgia for export shall not be subject to the tax herein imposed. [Emphasis added.] (b) On foreign wines having an alcoholic strength of not more than 14% alcohol by volume, 40 cents per gallon. On foreign wines between 14% and 21% alcoholic strength by volume, 60 cents per gallon. *Foreign wines are hereby defined and declared to be wines which are imported in whole or in part into the State of Georgia, or manufactured in the State of Georgia from products imported in whole or in part from without the State and produced by natural fermentation.*" (Emphasis added.) Section 6 provides in part: "The taxes levied under section 3 of this Act shall be paid through the use of wine revenue stamps, as herein provided for." Section 3 of the act does not

levy and collect taxes on wines manufactured within or without the State other than those produced by natural fermentation, nor does it levy and collect taxes upon any wines, foreign or domestic, having an alcoholic content greater than 21 percent, nor upon non-fermented or synthetic wines, etc. Therefore, through section 3, there are still left some wines upon which no taxes are levied and collected. Thus, even if taxing the wines defined in section 3 can be said to impliedly legalize those wines, there are other wines not taxed which are not impliedly legalized by being taxed, and those wines are still prohibited under Code §§ 58-101 and 58-201. See, in this connection, *Pierce* v. *State*, 73 *Ga. App.* 627, 632 (37 S. E. 2d, 431). Thus the act of 1935 as amended by the act of 1937 (p. 851) does not entirely remove the mere possession of wines generally from the operation of the general prohibition law. In *Owen* v. *State*, 78 *Ga. App.* 558 (51 S. E. 2d, 602), it is stated: " 'When the statute provides that the *commission of an act by any person, or under all circumstances,* shall constitute an offense, and then declares that the provisions of the act shall not apply to a particular class of persons, or to a specified set of circumstances, the burden is on the accused to show that he comes within some of the exceptions' of the general law." Therefore, where the indictment, as here, alleges the possession of wine in a dry county, such as Floyd County, it alleges an offense against the general "bone dry" law of Georgia, but the defendant may successfully defend by proving that he comes within an exception to the general law made by the act of 1935, and the acts amendatory thereto, or any other statute which is applicable, but the burden is upon the defendant to show that he comes within the exception. Section 4 of the act of 1937 (Ga. L. 1937, pp. 851, 854) provides: "License Tax on Manufacturers or Dealers. The following occupational license tax shall be imposed upon each winery, manufacturer, wholesaler, jobber, or retail dealer of wines as follows: (a) Upon each winery or manufacturer, being any establishment manufacturing wine for resale, and upon each wholesaler or jobber, there shall be imposed an annual occupation tax of two hundred and fifty ($250.00) dollars. (b) Upon each retailer or retail establishment selling wines in broken case lots or broken container lots for consumption, either on or off the premises

of such retailer or establishment, there shall be imposed an annual license tax of fifteen ($15.00) dollars. All license taxes provided for herein shall be collected by the State Revenue Commission, and permits to all manufacturers, wineries, or wholesalers, jobbers, or retail dealers shall be issued by said Commission upon payment of the said tax." This section seems to refer to sales, offers to sell, storing or possessing for the purpose of selling, wine, and not to the possession of wine for other purposes. See, in this connection, Code §§ 58-101, 58-201, 58-102. We are confirmed in this construction, for section 7 (d) of the act of 1937 provides: "No person, firm or corporation shall sell, offer for sale, store or possess for the purpose of selling, wines without first obtaining a license appropriate to the type of business carried on by such person, firm or corporation. No person, firm or corporation shall sell, offer for sale, store or possess for the purpose of selling any wine, which does not bear the proper wine revenue stamp as evidence of the tax provided for in this act as having been paid to the State of Georgia." By a subsequent section a violation of this provision is made a misdemeanor. Thus it would be well to note especially that the law with reference to the selling, offering for sale, storing or possessing for the purpose of selling, wines is not entirely the same as that for merely possessing wine for other purposes generally. From the beginning of the general prohibition law passed in 1915, it was a crime to possess vinous liquors and beverages under Code § 58-101, but it was a separate crime for any person "to sell, offer for sale, or keep for sale . . " (Code, § 58-102) vinous liquors and beverages, and the legislature, in passing the acts of 1935, 1937, and 1937-38 especially, seems at least to have made different provisions as to these separate offenses.

The possession of wine is prima facie a violation of the general prohibition law. Prior to the act of 1937-38 (p. 103), there were types of wine which, as indicated above, it was not unlawful merely to possess in any county of the State. There were other types of wine the possession of which was unlawful in any county. From and after the passage of the act of 1937-38 (p. 103), the possession of more than one quart of fortified wine having more than 21% alcohol by volume was unlawful in a dry county (we are assuming compliance with the tax laws and

omit any discussion on that ground entirely), as such wine was by the act of 1937-38 (p. 103, Code, Ann. Supp., § 58-1058) to be treated as a spirituous or alcoholic liquor. It was also unlawful, after the passage of the act of 1937-38 (p. 103), to possess more than one quart of fortified wine, as defined by the Federal Alcohol Administration (see Code, Ann. Supp., § 58-1011) —containing more than 14% alcohol by volume. Thus, after the passage of the act of 1937-38 (p. 103), the only wines which could be lawfully possessed in a dry county were those wines produced by natural fermentation, permitted under the acts of 1935 and 1937, which had not been placed back under the general prohibition law by the act of 1937-38 (p. 103). We arrive at this conclusion from this: Code (Ann. Supp.) § 58-1077, when construed with Code (Ann. Supp.) §§ 58-1078 and 58-1011, makes it unlawful in a dry county for one to possess more than one quart of the liquors described in the act of 1937-38 (p. 103), and fortified wine, as defined by the Federal Alcohol Administration, is one of the liquors therein described. That is to say, we think that the legislature not only intended by the act of 1937-38 (p. 103) to legalize and control in wet counties the liquors described in the act, but it also, by Code (Ann. Supp.) § 58-1073 and the other sections in pari materia, intended to legalize and control and give to persons in dry counties one quart of the liquors legalized and described in the act for use and not for sale, etc.; and in *Pierce* v. *State*, 200 *Ga.* 384 (37 S. E. 2d, 201), in construing Code (Ann. Supp.) §§ 58-1077 and 58-1073 together, it is in effect said that the act meant that, in a dry county, one could have only one quart of spirituous, vinous, and alcoholic liquors for use and not for sale, etc. We do not think that the act intended to restrict the kinds of liquors one may have in a dry county to those described in Code (Ann. Supp.) § 58-1077 ("spirituous, vinous, and alcoholic liquors"); but we think that the legislature intended by the act to make it not unlawful to have for use and not for sale, etc., one quart of the liquors legalized, described, and controlled by the act. *Shafer* v. *State,* 193 *Ga.* 748 (20 S. E. 2d, 34). Irrespective of whether "fortified" wine comes within the generic term "vinous" in Code (Ann. Supp.) § 58-1077, it is one of the liquors referred to in Code (Ann. Supp.) § 58-1073 as one of the liquors "described"

in the act. See Code (Ann. Supp.) § 58-1011, where fortified wine is included in the definition of spirituous liquors and distilled liquors. It might also be noted that in Code (Ann. Supp.) § 58-1058, if fortified wine contains more than 21% alcohol by volume, it is specifically to be classed and treated as "liquor."

The fact that since the passage of the act of 1937-38 (Ga. L. 1937-38, Ex. Sess., p. 103), the act of 1937-38 (Ga. L. 1937-38, Ex. Sess., p. 185), and the act of 1941 (Ga. L. 1941, p. 234), were enacted, does not change the situation relative to the mere possession of wine as it existed on February 3, 1938, the date of the approval of the act of 1937-38, Ex. Sess., p. 103. Under the provisions of section 3 of the act of 1937 (Ga. L. 1937, pp. 851, 853, approved March 30, 1937), certain specified wines were impliedly legalized by being taxed. The total effect of the amendments to this section was merely to change the rates of taxation on some of the wines which had already been specified, designated, and impliedly legalized under section 3 of the act of 1937 (p. 851). No additional wines were legalized by the amendments to section 3.

2. "The office of the videlicit is to particularize that which is general and explain that which is doubtful or obscure; but it must neither be contrary to nor increase or diminish the precedent matter. If what comes under it is repugnant to the precedent matter the videlicit must be treated as surplusage." State *v.* Brown, 51 Conn. 1. The material part of the indictment was as follows: the defendant did "possess and control and have in his possession, custody, and control, spirituous, alcoholic and intoxicating liquors and distilled spirits, to wit [the videlicit]: wine, being 24 pints thereof in pint bottles, said wine not being domestic wine distilled and made by the said accused for the use of himself and his family." The effect of the videlicit was to restrict the charge to that of the possession of wine, and the expression, "spirituous, alcoholic and intoxicating liquors and distilled spirits, to wit, wine," is to be taken as meaning that the wine was of such a character as to fall within the meaning of either "spirituous, alcoholic, or intoxicating liquors, or distilled spirits." See Mallet *v.* Stevenson, 26 Conn. 428; *Kemp* v. *State,* 120 *Ga.* 157, 159 (47 S. E. 548); *Shafer* v. *State,* supra.

For the reasons stated in divisions 1 and 2, the court did not

err in overruling the demurrers, general or special, to the indictment. See, in this connection, *Carter* v. *State,* 60 *Ga. App.* 758, 760 (5 S. E. 2d, 244).

After careful consideration, the request to review and overrule the case of *Owen* v. *State,* 78 *Ga. App.* 558 (51 S. E. 2d, 602), is refused, as is the request that the question presented in this case be certified to the Supreme Court.

*Judgment affirmed.   Gardner and Townsend, JJ., concur.*