## 34838. PREMIUM DISTRIBUTING COMPANY, INC., *et al.* v. STATE OF GEORGIA *et al.*

DECIDED NOVEMBER 24, 1953.

224

226

*Peyton S. Hawes, Jos. B. McGinty,* for plaintiffs in error.

*Howard B. Payne, Solicitor,* contra.

GARDNER, P. J. ■ The question for decision here is whether or not the wines as set out in the petition, which were stamped properly under the law, were contraband, the transportation of which would subject the automobile in question to condemnation. The pertinent statute which is applicable here will be dealt with now.

The General Assembly in 1935 passed an act (Ga. L. 1935, p. 492), the caption of which is: "An Act to promote temperance and prosperity for Georgia people; to foster and encourage the growing of grapes, fruits and berries on Georgia farms; to legalize the making of light domestic wines; to exempt from all taxation wine made from crops of grapes, fruits, and berries, whether wild or cultivated, by producers in Georgia of such crops, and to provide for the holding of an election to ratify or reject this Act; and for other purposes."

Section 2 of this same act reads: "Be it and it is hereby further enacted that any grower of such crops may make such wines and sell same to any person, firm or corporation who may now be or hereafter legally engaged, either as wholesaler or retailer, in the sale of alcoholic beverages, free from any taxation whatever."

This act provided a State-wide referendum. The State as a whole adopted by referendum the provisions of this act. It will be noted that this act made legal the possession and sale of certain wines by parties named therein who complied with certain requirements provided for in said act. It is also well in this connection to note that any county which desired to exclude the provisions of this act from operation within the county could, by complying with the provisions of said act, vote out or prohibit the manufacture and sale of such wines within the confines of the county. In the event the county voted out the manufacture and sale of such wines as provided for in the act, it would

be unlawful to make or sell the wines mentioned in said act. This is the act which is generally known as the Domestic Wine Act.

The General Assembly in 1937 (Ga. L. 1937, p. 851) amended the said act of 1935; the caption of the amending act is as follows: "An Act to amend an Act entitled, 'An Act to promote temperance and prosperity for Georgia people; to foster and encourage the growing of grapes, fruits and berries on Georgia farms; to legalize the making of light domestic wines; to exempt from all taxes wines made from crops of grapes, fruits and berries whether wild or cultivated by producers in Georgia of such crops and to provide for the holding of an election to ratify or reject this Act; and for other purposes'; approved March 23, 1935, and contained on pages 492 to 494 of the Acts of the General Assembly of 1935; by striking certain words and sections from said Act; by legalizing the making and manufacturing and selling of domestic and foreign wines; by defining domestic and foreign wines; by providing for licensing of retail and wholesale dealers and wineries; by providing for a license tax on all dealers, manufacturers and wineries; and a tax on all wines manufactured or sold; by providing for the confiscation and destruction of wines manufactured, possessed or sold contrary to the provisions of this Act; by prohibiting the sale of wine on the Sabbath day, and to provide a penalty for the violation of this provision; by allocating the revenue derived under this Act; by providing for rules and regulations for the enforcement of this Act; by providing a separability clause; and for the repeal of all laws in conflict with this Act; and for other purposes."

The amending act of 1937 made lawful the manufacturing and selling of domestic wines, and in section 3, subsection (a), fixed a tax of 30¢ per gallon on wines which were between 14% and 21% alcoholic content by volume; and further on wines of not more than 14% alcoholic content by volume the act fixed a tax of 10¢ per gallon. Section 3, subsection (b) of said act defined foreign wines, and stated that, where the alcoholic content is not more than 14% by volume, a tax of 40¢ per gallon would be levied and, for wines between 14% and 21% alcoholic content by volume, a tax of 60¢ per gallon would be levied. It may be specifically noted that the amending act retained the

provision of the 1935 act to the effect that the general referendum by the State as a whole would legalize the possession and sale of wines by complying with the provisions of the 1935 act, and the 1937 act where the manufacturing and selling of wines had not been prohibited by a vote of the county.

The laws with reference to alcoholic wines as defined in the act of 1935, supra, and in the act of 1937, supra, amendatory of the act of 1935, have not been changed by any other act of the General Assembly in any material way to affect the laws applicable to wines as provided for in the act of 1935, supra, and the amendment of that act under the act of 1937, supra. Those acts mentioned set out the laws applicable to a county which has not prohibited the sale of such wines in such counties.

■ Having thus satisfied ourselves as to the laws applicable to the issue here, we now turn to the facts to see whether or not the automobile in question is subject to condemnation under the petition, the demurrers, and the stipulations. The petition boils down to the proposition that the automobile was used to transport foreign wines not in excess of 21% alcoholic content by volume, bearing the required revenue stamps. The petition, paragraph 5 as amended, alleges: "That Elbert County, Georgia, is a dry county in which wines as above described [in the petition hereinabove quoted] are not permitted to be sold, transported, or possessed in the quantity mentioned and that Harley Rucker [to whom the four cases of foreign wines were delivered] does not possess a license from the licensing authorities of Elbert County to sell wines of the kind described in this seizure. No persons, firm or corporation in Elbert County, Georgia, has or had on the 22nd of May, 1953, a license to sell said wines or to keep said wines on hand in the quantity mentioned, in Elbert County, Georgia, and the condemnees had no such license." The factual stipulations we will again quote: "Elbert County is a 'dry' county, by which it is meant that the legislative enactments for the control and legalization of whisky have not been adopted by a local referendum. The Wine Act of the State of Georgia of 1935, as since amended, wine has not at any time been voted out in a referendum in Elbert County called for that purpose as provided in said Act of 1935, there has never been any other referendum in Elbert County of any kind under the Wine Act.

That the Commissioner of Roads and Revenue of Elbert County has never at any time issued a license to any one for the sale of wine in Elbert County as provided for in said act. No applications for license to sell wine have been made to Elbert Co. Comm. This July 18, 1953."

It will be noted that the petition does not allege that the defendants were or were not licensed in any way to transport the wines in question. It is not alleged or shown that anyone sold the wines in question in Elbert County. Tax-stamped wines in Georgia are not contraband in counties which have not voted out wines under the acts of 1935 and 1937, supra. So far as the facts in this case show, the automobile in question was a privately owned automobile which transported the wines in question over the highways named and delivered the wines to Mr. Harley Rucker. We know of the violation of no law under the record of this case which would subject an automobile to condemnation for merely transporting any quantity of wines into a county which had not voted out the provisions of the act of 1935, supra, and the amendatory act of 1937, supra. This specific power of condemnation invoked in this case by the State of Georgia is in derogation of the common law, must be strictly construed, and is not to be enlarged by implication. See *State of Georgia* v. *Schafer*, 82 *Ga. App.* 753 (62 S. E. 2d 446). There are many other decisions to the same effect.

It is noted that section 10 of the act of 1937 (Ga. L. 1937, p. 860; Code, Ann. Supp., § 58-930) empowers any officer of the revenue department to declare contraband and destroy any wine that has "an alcoholic content of more than 16 per cent by volume." The court has examined the original bill in the House of Representatives (House Bill 723) and, through the media of the journals of the House and Senate, has traced the legislative progress of the bill through the two houses to its final enactment. In the first of numerous amendments to the bill in the House and in the Senate, the figure of 16% was added as the upper limit for the alcoholic content of all wines in Georgia, but by a later amendment that figure was dropped and the 21% figure was substituted and adopted by the conference committee of the two houses appointed to reconcile the differences between the two houses, and wherever 16% had appeared before, 21% was sub-

stituted throughout the bill, except in section 10. Therefore, it is clear, and this court holds that, inasmuch as this section is inconsistent with the many other paragraphs of the act, the General Assembly manifestly intended that the 16% figure in section 10 should be changed to 21% in keeping with the same changes made at other points in the bill, and the fact that it was not changed was a mere oversight. 2 Sutherland, Statutory Construction (3rd ed.) 506, § 5015; Gay v. Ruff, 292 U. S. 25 (54 Sup. Ct. 608, 78 L. ed. 1099). Other interpretation on that section would make the act itself contradictory and inconsistent, and acts of the General Assembly will always be given a reasonable intendment by the courts where possible. *State Revenue Comm.* v. *Alexander,* 54 *Ga. App.* 295 (1) (187 S. E. 707), and citations.

We are asked in this proceeding to overrule the cases of *Owen* v. *State,* 78 *Ga. App.* 558 (51 S. E. 2d 602), and *Colbert* v. *State,* 80 *Ga. App.* 641 (56 S. E. 2d 830). Those cases deal with a different offense, i.e., illegally possessing wine, and not, as here, the illegal transportation of wine. Illegal possession is not alleged in the instant case. We are here dealing with only the illegal transportation of the wine in question in the automobile sought to be condemned. It may be said that, if the transportation in the instant case was not illegal, the possession of the wine in the instant case was not illegal. If there be anything in those two decisions by implication or otherwise that is in conflict with the holdings in the instant case, those cases are in all such respects overruled.

The court erred in overruling the respondents' demurrers to the petition to condemn the automobile in question.

*Judgment reversed. Sutton, C. J., Felton, Townsend, Carlisle, and Quillian, JJ., concur.*